**PORT FREEPORT f/k/a Brazos River Harbor Navigation District, Appellant,**

v.

**RLB CONTRACTING INC., Appellee.**

**No. 01–11–00778–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

April 26, 2012.

George Tobin Wommack, Oaks Hartline & Daly, Lake Jackson, TX, Ramon G. Viada, Viada & Strayer, Woodlands, TX, for Appellant.

David F. Johnson, Winstead PC, Fort Worth, TX, Mark C. Guthrie, Matthew Z. Hawthorne, Winstead PC, Matthew Zane Harthorne, Chamberlain, Hrdlicka, White, Williams & Martin, Houston, TX, Sandra Buxkemper Witte, Roberts, Roberts, Odefey & Witte, Port Lavaca, TX, for Appellee.

Panel consists of Justices KEYES, BLAND, and SHARP.

## OPINION

EVELYN V. KEYES, Justice.

Appellant, Port Freeport *f/k/a* Brazos River Harbor Navigation District ("Port Freeport") challenges the trial court's denial of its plea to the jurisdiction. It its sole issue, Port Freeport argues that the claim of appellee, RLB Contracting Inc. ("RLB"), for breach of contract does not fall within the scope of the waiver of governmental immunity in Texas Local Government Code section 271.152.[1]

We affirm.

## Background

Port Freeport and RLB entered into a construction contract for RLB to provide excavating, hauling, and compacting services for Port Freeport's Velasco Terminal Site Civil Project ("the Project"). This contract was comprised of over one hundred pages. The specific agreement between Port Freeport and RLB provided that RLB, as the Contractor,

> shall complete all Work as specified or indicated in the Contract Documents. The Work ... generally consists of mechanical excavation to specified grades in upland areas and to EL (-) 12–ft from the channel area, placement and com-

---

1. *See* Tex. Loc. Gov't Code Ann. § 271.152 (Vernon 2005) (waiving governmental immu- nity from suit for certain types of contracts).

paction of excavated material to specified grades in the backlands area; and installation of scour protection revetment, footbridge, protective dolphins, mooring points, building pad, access road, and utilities required to support the barge fleeting area as shown in the drawings for the VELASCO TERMINAL SITE CIVIL PROJECT.

It further provided that Goldston Engineering, Inc., the Project designer, was the "Engineer" for purposes of the contract documents.

Relevant to this appeal, the contract between RLB and Port Freeport also provided a "contract price" of $6,938,000 and stated,

> The above total price includes the cost of the unit rate items listed below. In the unit rates, the Bidder [RLB] shall provide an all-in rate for adjusting the price of a work item should the quantity be adjusted as a result of a change in the scope of work, or the actual quantity differ from the quantity stipulated as a basis of the bid. If the Bidder notes any variances from the estimated quantities, he shall use the stipulated estimated quantities for his Base Bid and shall advise the Owner of such variances.

The contract then provided a "unit rate" of $7 per cubic yard for the "excavation, transport, placement and compaction of fill material in designated areas on site." It provided a quantity of 365,000 cubic yards to be excavated at a total price of $2,555,000. The contract also established payment procedures; provided Contractor representations that RLB was "familiar with the nature and extent of the Contract Documents, Work, site, locality, and all local conditions" and had "reviewed and checked all information and data shown or indicated on the Contract Documents," among other things; and incorporated other general documents into the agreement between the parties, including the "General Conditions of the Construction Contract."

The General Conditions, in relevant part, contained articles addressing "differing subsurface or physical conditions," procedures for changes in the work and for providing notice of claims and disputes under the contract, methods for determining cost of the work, allowances, and unit price of the work, and methods for changing the contract price and contract times. Specifically, article 4.03 of the General Conditions provided:

> 4.03 *Differing Subsurface or Physical Conditions*
>
> A. *Notice:* If Contractor believes that any subsurface or physical condition at or contiguous to the Site that is uncovered or revealed either:
>
> 1. is of such a nature as to establish that any "technical data" on which Contractor is entitled to rely ... is materially inaccurate; or
>
> 2. is of such a nature as to require a change in the Contract Documents; or
>
> 3. differs materially from that shown or indicated in the Contract Documents; or
>
> 4. is of an unusual nature, and differs materially from conditions ordinarily encountered and generally recognized as inherent in work of the character provided for in the Contract Documents;
>
> then Contractor shall, promptly after becoming aware thereof and before further disturbing the subsurface or physical conditions or performing any Work in connection therewith (except in an emergency ...), notify Owner and Engineer in writing about such condition. Contractor shall not further disturb such condition or perform any Work in con-

nection therewith (except as aforesaid) until receipt of written order to do so. Article 4.03 went on to provide that the Engineer would review the condition and determine the necessity of any further action and would advise the Owner, Port Freeport, in writing. It further provided that "[t]he Contract Price or the Contract Times, or both, will be equitably adjusted to the extent that the existence of such differing subsurface or physical condition causes an increase or decrease in Contractor's cost of, or time required for, performance of the Work," subject to certain conditions.

Article 10.05(A) provided the procedure for addressing "Claims and Disputes":[2]

A. *Notice:* Written notice stating the general nature of each Claim, dispute, or other matter shall be delivered by the Contractor to Engineer and the Owner promptly (but in no event later than 30 days) after the start of the event giving rise thereto. Notice of the amount or extent of the Claim, dispute or other matter with supporting data shall be delivered to the Engineer and the Owner within 60 days after the start of such event.... A Claim for an adjustment in Contract Price shall be prepared in accordance with the provision of Paragraph 12.01 B. A Claim for an adjustment in Contract Time shall be prepared in accordance with the provisions of Paragraph 12.02 B. Each Claim shall be accompanied by Contractor's written statement that the adjustment claimed is the entire adjustment to which the claimant believes it is entitled as a result of said event.

Article 10.05 further provided that the Engineer would render a formal decision in writing which, if approved by the Owner, would be "final and binding" on the parties unless one of them provided to the other a written notice of intent to appeal the decision. Article 10.05(F) provided: "No claim for an adjustment in Contract Price or Contract Time will be valid if not submitted in accordance with this Paragraph 10.05."

Article 11.03 addressed "Unit Price Work" and provided:

A. Where the Contract Documents provide that all or part of the Work is to be Unit Price Work, initially the Contract Price will be deemed to include for all Unit Price Work an amount equal to the sum of the unit price for each separately identified item of Unit Price Work times the estimated quantity of each item as indicated in the Agreement.

B. The estimated quantities of items of Unit Price Work are not guaranteed and are solely for the purpose of comparison of bids and determining an initial Contract Price. Determinations of the actual quantities and classifications of Unit Price Work performed by Contractor will be made by Engineer....

C. Each unit price will be deemed to include an amount considered by Contractor to be adequate to cover Contractor's overhead and profit for each separately identified item.

D. Owner or Contractor may make a Claim for an adjustment in the Contract Price in accordance with Paragraph 10.05 if:

1. the quantity of any item of Unit Price Work performed by Contractor differs materially and significantly from the estimated quantity of such item indicated in the Agreement; and

---

**2.** The contract defines "Claim" as "A demand or assertion by Owner or Contractor seeking an adjustment of Contract Price or Contract Times, or both, or other relief sought by Contractor with respect to the terms of the Contract...."

2. there is no corresponding adjustment with respect to any other item of Work; and

3. Contractor believes that Contractor is entitled to an increase in Contract Price as a result of having incurred additional expense or Owner believes that Owner is entitled to a decrease in Contract Price and the parties are unable to agree as to the amount of any such increase or decrease.

Article 12.01 provided that any change to the Contract Price must be made by a written Change Order and any Claim for an adjustment "shall be based on written notice submitted by the party making the Claim to the Engineer and the other party to the Contract in accordance with the provisions of article 10.05. Article 12.01(B) provided:

The value of any Work covered by a Change Order or of any Claim for an adjustment in the Contract Price will be determined as follows:

1. where the Work involved is covered by unit prices contained in the Contract Documents, by application of such unit prices to the quantities of the items involved (subject to the provisions of Paragraph 11.03). . . .

Article 12.02 addressed changes of Contract Time, which also required a change order. Article 12.02(B) provided, "Any adjustment of the Contract Times covered by a Change Order or any Claim for an adjustment in the Contract Time will be determined in accordance with the provisions of this Article 12."

A dispute over various aspects of the contract's performance resulted in RLB filing suit against Port Freeport, alleging multiple causes of action for breach of contract, including the claim that Port Freeport

has not fully compensated [RLB] in accordance with the terms of the Contract, and has materially breached the Contract by interfering with [RLB's] performance of the Contract, failing to execute change orders in accordance with the Contract, changing the scope of Plaintiff's work under the Contract but failing to compensate Plaintiff for the additional delays, costs and expenses resulting from the changes in Plaintiff's scope of work, failing to adjust the Contract amount and time in accordance with the terms of the Contract, withholding Liquidated Damages due under the Contract, and failing to pay Plaintiff in accordance with the terms of the Contract.

RLB alleged that the contract provided for extension of the time to complete performance under certain circumstances and that it "provided for price adjustments for changes in the scope of work and other events." It alleged that it "encountered a number of issues which complicated and delayed its performance, and caused [it] to incur additional and unforeseen expenses and costs." RLB contended that one such complication was that

[t]he material excavated by [it] was significantly wetter and more silty than the parties anticipated. This resulted in the need to treat more material with lime than the parties originally anticipated in order to effectively dry it, decreased productivity, extended the time to complete the Project, and substantially increased Plaintiff's costs. Plaintiff was required to excavate, haul, lime and compact a material and significant additional amount of this wetter than anticipated fill material not anticipated under the Contract and not contemplated in the Contract unit prices. Defendant refused to appropriately adjust the Contract price and failed to fully compensate Plaintiff for this additional work, or

extend the contract time for this additional work. Plaintiff is entitled to a Contract price increase of $436,120 plus an additional amount for fuel escalation during the extended performance period. . . .

RLB alleged that Port Freeport "is amenable to suit for breach of contract pursuant to a waiver of immunity set forth in Texas Local Government Code § 271.152 in that [Port Freeport] executed a written contract stating the essential terms of the agreement for providing goods and services to a local governmental entity that was properly executed on behalf of the local governmental entity." RLB also alleged that "[a]ll conditions precedent to this action, recovery under the Contract, and recovery for the claims asserted in this case have occurred, been performed or are waived, excused, and/or [Port Freeport] is estopped to assert them." Specifically, RLB alleged that it "gave proper notice in accordance with the Contract of its claims under the Contract including without limitation, written notices on January 28, 2008, May 2, 2008, May 8, 2008, June 17, 2008, June 30, 2008, July 9, 2008, July 10, 2008, September 5, 2008, September 10, 2008, and October 20, 2008. These notices were supplemented by additional oral notices and discussions." It further pled that any additional requirements that it give notice have "been waived by [Port Freeport], [Port Freeport] is estopped to assert such requirement, [Port Freeport] is precluded from asserting such a requirement by reason of its prior material breach of the Contract, and/or the notice provisions in the contract are void under Texas Civil Practice and Remedies Code section 16.071." RLB

sought total damages in the amount of $1,329,750.

Port Freeport filed a plea to the jurisdiction challenging the trial court's jurisdiction to hear RLB's claims. It argued that "RLB failed to meet the adjudication procedures requirements of the contract, including notice and alternative dispute resolution." [3] Specifically, it argued that "[i]f RLB believed that the conditions of the worksite were materially different than anticipated, then the Contract Documents provided that RLB had to (i) provide Port Freeport with written notice and, (ii) stop performing any further work until Port Freeport's engineers could assess the issue" in compliance with article 4.03 of the General Conditions. Port Freeport argued that because RLB failed to comply with the contractual, mandatory pre-suit adjudication procedure, its immunity from suit was not waived.

The trial court denied the plea to the jurisdiction, and this appeal followed. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(8) (Vernon Supp.2011) (allowing interlocutory appeal of grant or denial of plea to jurisdiction by governmental unit).

### Plea to the Jurisdiction

In its sole issue, Port Freeport argues that the trial court erred in denying its plea to the jurisdiction.

### A. Standard of Review

A plea to the jurisdiction challenges the trial court's subject matter jurisdiction to hear the case. *See Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex.2000). Subject matter jurisdiction is essential to the authority of a court

---

3. Port Freeport also moved for traditional and no evidence summary judgment, which was denied by the trial court. The only ruling

before this Court on interlocutory appeal is the trial court's denial of the plea to the jurisdiction.

to decide a case and is never presumed. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex.1993). The existence of subject matter jurisdiction is a question of law. *State Dep't of Hwys. & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex.2002). Therefore, we review the trial court's ruling on a plea to the jurisdiction de novo. *Id.*

 The plaintiff has the burden to allege facts affirmatively demonstrating that the trial court has subject matter jurisdiction. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446. When a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court must consider relevant evidence submitted by the parties. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex.2004). If the evidence creates a fact question regarding jurisdiction, the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder; however, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law. *Id.* at 227–28. In deciding a plea to the jurisdiction, a court may not consider the merits of the case, but only the plaintiff's pleadings and the evidence pertinent to the jurisdictional inquiry. *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002). In conducting our review, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Miranda*, 133 S.W.3d at 228.

**B. Waiver of Immunity**

 Governmental immunity has two components—immunity from liability and immunity from suit. *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex.2006). A unit of state government is immune from suit and liability unless the state consents.

*See Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex.1999). Immunity from suit defeats a trial court's subject matter jurisdiction and is properly asserted in a plea to the jurisdiction. *Id.* at 639. Immunity from liability protects the state from money judgments even if the Legislature has expressly given consent to sue. *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 853 (Tex.2002).

 By entering into a contract, a governmental entity waives its immunity from liability for breach of the contract, "but does not, merely by entering into a contract, waive immunity from suit." *Tex. A & M Univ.-Kingsville v. Lawson*, 87 S.W.3d 518, 520 (Tex.2002); *Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex.2001). When a state contracts, it is liable on contracts made for its benefit as if it were a private person. *Little–Tex Insulation Co.*, 39 S.W.3d at 594 (citing *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex.1997)). Immunity from suit bars a suit against a governmental entity unless the Legislature expressly consents to the suit by resolution or by clear and unambiguous statutory language. *Tooke*, 197 S.W.3d at 332–33; *see also* Tex. Gov't Code Ann. § 311.034 (Vernon Supp. 2011) (providing that statute shall not be construed as waiving sovereign immunity unless waiver is effected by clear and unambiguous language).

Local Government Code Section 271.152 waives a governmental entity's immunity from suit for certain contracts:

A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

Tex. Loc. Gov't Code Ann. § 271.152 (Vernon 2005). The Local Government Code defines "a contract subject to this subchapter" as "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." *Id.* § 271.151(2) (Vernon 2005).

■ Thus, [f]or section 271.152's waiver of immunity to apply, three elements must be established: (1) the party against whom the waiver is asserted must be a "local governmental entity" as defined by section 271.151(3), (2) the entity must be authorized by statute or by the Constitution to enter into contracts, and (3) the entity must in fact have entered into a contract that is "subject to this subchapter," as defined by section 271.151(2).

*City of Houston v. Williams,* 353 S.W.3d 128, 134–35 (Tex.2011). A contract must meet five elements in order to be a contract subject to section 271.152's waiver of immunity: "(1) the contract must be in writing, (2) state the essential terms of the agreement, (3) provide for goods or services, (4) to the local governmental entity, and (5) be executed on behalf of the local governmental entity." *Id.* at 135.

Section 271.153 provides "Limitations on Adjudication Awards":

(a) The total amount of money awarded in an adjudication brought against a local governmental entity for breach of a contract subject to this subchapter is limited to the following:

(1) the balance due and owed by the local governmental entity under the contract as it may have been amended, including any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration;

(2) the amount owed for change orders or additional work the contractor is directed to perform by a local governmental entity in connection with the contract;

(3) reasonable and necessary attorney's fees that are equitable and just; and

(4) interest as allowed by law. . . .

Tex. Loc. Gov't Code Ann. § 271.153 (Vernon Supp.2011).

Section 271.154 provides:

Adjudication procedures, including requirements for serving notices or engaging in alternative dispute resolution proceedings before bringing a suit or an arbitration proceeding, that are stated in the contract subject to this subchapter or that are established by the local governmental entity and expressly incorporated into the contract or incorporated by reference are enforceable except to the extent those procedures conflict with the terms of this subchapter.

*Id.* § 271.154 (Vernon 2005).

The statute does not define "adjudication procedures," but it provides:

"Adjudication" of a claim means the bringing of a civil suit and prosecution to final judgment in county or state court and includes the bringing of an authorized arbitration proceeding and prosecution to final resolution in accordance with any mandatory procedures established in the contract subject to this subchapter for the arbitration proceedings.

*Id.* § 271.151(1).

## C. Analysis

The parties do not dispute that Port Freeport is a local governmental entity empowered to enter into contracts as contemplated by section 271.152. *See Williams,* 353 S.W.3d at 134–35; *see also*

Tex. Loc. Gov't Code Ann. § 271.151(3) (providing that " '[l]ocal governmental entity' means a political subdivision of this state," including "special-purpose district or authority" such as "navigation district"). Nor do the parties dispute that the nature of the contract between them was a written contract for "goods or services" provided to a local governmental entity as contemplated by section 271.151. *See Williams*, 353 S.W.3d at 135; *see also* Tex. Loc. Gov't Code Ann. § 271.151(2) (defining "contract subject to this subchapter");.

Port Freeport argues that RLB's claim for an "equitable adjustment" of the unit price for the excavation work does not fall within section 271.152's waiver of immunity from suit because: (1) the contract does not state the essential terms of the agreement between the parties on this claim; (2) RLB's claim is properly characterized as an equitable claim, rather than as a breach of contract claim, and does not fall within that waiver; and (3) RLB did not comply with contractual pre-suit procedures, and thus RLB did not satisfy the "terms and conditions" of the subchapter because it did not comply with section 271.154.

### 1. Does the contract provide the essential terms?

■ Port Freeport argues that, because RLB did not comply with the provisions of article 4.03 regarding changed site conditions and "did not await a written change work directive from the Port before excavating the materials it now claims were wetter and siltier[,] . . . [t]here is no written contract between these parties for RLB to remove what it now claims to be materially different materials for the materially different price it now seeks." It further argues that RLB's claim for an "equitable adjustment" is not based on a written contract that states an essential price term.

■ The "essential terms" of an agreement include, among other things, "the time of performance, the price to be paid, . . . and the service to be rendered." *Id.* at 138–39 (quoting *Kirby Lake Dev. Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 838 (Tex.2010)). "Contracts should be examined on a case-by-case basis to determine which terms are material or essential." *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 74 (Tex. App.-Houston [14th Dist.] 2010, pet. denied) (citing *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992)). A contract is legally binding "if its terms are sufficiently definite to enable a court to understand the parties' obligations." *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex.2000).

The contract at issue here provides the time for performance and the service to be rendered. It also provides the total contract price, and it lists a "unit rate" and estimated quantity for the "excavation, transport, placement and compaction of fill material in designated areas on site" as comprising an estimated $2,555,000 of the total contract cost. Thus, the contract provides the essential terms of time of performance, the price to be paid, and the service to be rendered. *See id.* Furthermore, article 11.03 of the contract addresses the final calculation of payment due for "Unit Price Work," including the method by which the parties may seek an adjustment of the contract price. The contract between Port Freeport and RLB provides:

In the unit rates, the Bidder [RLB] shall provide an all-in rate for adjusting the price of a work item should the quantity be adjusted as a result of a change in the scope of work, or the actual quantity differ from the quantity stipulated as a basis of the bid. If the Bidder notes

any variances from the estimated quantities, he shall use the stipulated estimated quantities for his Base Bid and shall advise the Owner of such variances.

Articles 4.03, 10.05, and 12.01 also address methods for making claims for changes in the contract price, and other portions of the agreement refer to circumstances and procedures for obtaining change orders on the scope and time of work to be performed. Therefore, the contract contains the essential provisions for resolving RLB's allegations regarding its compensation under the contract. *See id.; T.O. Stanley Boot Co.*, 847 S.W.2d at 221; *Parker Drilling Co.*, 316 S.W.3d at 74.

We observe that Port Freeport's argument on appeal relates to only one of RLB's breach of contract claims in the suit below. Port Freeport does not challenge on appeal the trial court's determination that it has jurisdiction to hear RLB's claims relating to its other allegations regarding failure to pay and adjustments to the contract time, as asserted in RLB's petition. Thus, it is undisputed that the contract falls within the provisions of chapter 271 for some of RLB's claims. *See City of Mesquite v. PKG Contracting, Inc.*, 263 S.W.3d 444, 447 (Tex.App.-Dallas 2008, pet. denied) ("Once the trial court determines whether the contract falls within the provisions of section 271.152, it need not parse further the pleadings or the contract to determine whether the legislature has waived immunity for breach of contract claims.").

We further observe that RLB's pleadings do not refer to the provisions of article 4.03 and that the facts and causes of action alleged in its pleadings could apply to several of the contract's provisions, including those in article 11.03. *See Williams*, 353 S.W.3d at 141 (holding that reviewing court is to construe pleadings

liberally in favor of plaintiff and look to pleader's intent in determining whether jurisdiction is proper).

We conclude that the contract contains all terms essential to resolution of RLB's breach of contract claims.

**2. Is RLB's claim properly characterized as an equitable claim?**

Port Freeport also argues that RLB's claim is essentially a claim for equitable relief rather than a claim for breach of contract and that equitable claims do not fall within the waiver provided by section 271.152.

▓▓▓▓▓ "In determining whether jurisdiction is proper, we look to the pleadings, 'construing them liberally in favor of the plaintiffs and looking to the pleader's intent.'" *Id.* (quoting *City of Waco v. Kirwan*, 298 S.W.3d 618, 621 (Tex.2009)). RLB's pleadings allege only claims for breach of contract and make no reference to any "equitable adjustment." *See id.* (stating, "the City's argument fails because the Firefighters' claim is, overall, one for breach of contract" in determining that Firefighters' claims that "could depend on a showing that certain parts of the City of Houston Code of Ordinances violated state law" were included within scope of section 271.152's waiver, and observing that "[r]elevant statutes can form a part of an employment contract"). Thus, Port Freeport mischaracterizes RLB's pleadings. The actual language of RLB's pleadings express an intent to allege only a breach of contract cause of action.

We conclude that RLB has pled a breach of contract claim, not a claim in equity, and, thus, its claims fall within the scope of section 271.152.

**3. Does section 271.154 prevent waiver of immunity to suit?**

■ Finally, Port Freeport argues that RLB's failure to comply with the procedures for addressing changes in site conditions under article 4.03 of the contract constitutes a failure to comply with contractual "adjudication procedures" under section 271.154. It argues that such a failure means that its immunity from suit is not waived for this claim.

In *Kirby Lake Development, Ltd.,* the Texas Supreme Court addressed the question of whether an agreement fell outside section 271.152's waiver of immunity because the plaintiff failed to plead for damages allowed by section 271.153. 320 S.W.3d at 839–40 (citing section 271.153's provision limiting "[t]he total amount of money awarded in an adjudication brought against a local governmental entity for breach of contract" to "the balance due and owed by the local governmental entity under the contract"). The water authority argued that there was no "balance due and owed," and thus its immunity from suit was not waived. *Id.* The supreme court held, "The purpose of section 271.153 is to limit the amount due by a governmental agency on a contract once liability has been established, not to foreclose the determination of whether liability exists." *Id.* at 840.

The Dallas Court of Appeals considered an argument essentially identical to Port Freeport's argument under section 271.154 in *PKG Contracting,* in which the City argued that "there is no waiver of immunity because PKG failed to comply with notice provisions in the contract for delay and extra work performed." 263 S.W.3d at 447. The court reasoned:

> Section 271.154 provides that if the parties agree to a particular procedure for adjudication of claims on the contract, that procedure will be enforced "except to the extent those procedures conflict with the terms" of section 271.151–.160. However, failure to give a contractual notice or to follow a contract procedure does not mean the suit is not for the purpose of adjudicating a claim for breach of a contract as defined by section 271.151(2). Whether PKG complied with the notice provisions of the contract may be an affirmative defense to the merits of the suit, but it would not deprive the trial court of subject matter jurisdiction.

*Id.* at 447–48 (internal citations omitted) (quoting Tex. Local Gov't Code Ann. § 271.154).

Likewise, we read nothing in the plain language of section 271.154 to support Port Freeport's argument that its immunity is not waived for this claim because RLB allegedly failed to comply with contractual notice procedures. Section 271.154 provides that such procedures are enforceable, but it does not provide that compliance with them is a prerequisite to invoking the waiver in section 271.152. *See* Tex. Local Gov't Code Ann. § 271.154; *PKG Contracting,* 263 S.W.3d at 447–48; *see also Fireman's Fund Cnty. Mut. Ins. Co. v. Hidi,* 13 S.W.3d 767, 768–69 (Tex. 2000) (stating that in construing statute, courts should look to plain meaning of words used in statute).

We conclude that section 271.154 does not prevent the application of section 271.152's waiver provision under the facts of this case.

Thus, we conclude that the trial court did not err in denying Port Freeport's plea to the jurisdiction. We overrule Port Freeport's sole issue.

### Conclusion

We affirm the order of the trial court denying Port Freeport's plea to the jurisdiction.