# IN THE SUPREME COURT OF TEXAS

No. 17-0905

SAN ANTONIO RIVER AUTHORITY, PETITIONER,

v.

AUSTIN BRIDGE & ROAD, L.P. AND HAYWARD BAKER, INC., RESPONDENTS

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS

JUSTICE BOYD, joined by CHIEF JUSTICE HECHT, JUSTICE GUZMAN, and JUSTICE DEVINE, dissenting.

Because I do not agree that the San Antonio River Authority was authorized to resolve its dispute with Austin Bridge & Road through *binding* arbitration,[1] I respectfully dissent.

## I.
## No Authority to Engage in *Binding* Arbitration

This case presents a deceptively significant issue. Although we have often acknowledged the benefits that binding arbitration can provide over litigation in the courts, we have also recognized that a party's election to submit disputes to binding arbitration is "consequential" for a number of important reasons. *Robinson v. Home Owners Mgmt. Enters., Inc.*, 590 S.W.3d 518,

---

[1] The Court also holds that (1) the courts (and not the arbitrator) must decide whether governmental immunity bars the claims that Austin Bridge asserted against the River Authority, and (2) governmental immunity does not bar the claims because chapter 271 of the Local Government Code waives that immunity. I agree that chapter 271 waives the River Authority's governmental immunity against Austin Bridge's claims, for the reasons the Court explains. *See ante* at ___. In light of my conclusion that the River Authority lacked authority to agree to engage in *binding* arbitration, I would not reach the question whether the court or the arbitrator should decide whether governmental immunity bars the claim.

526 (Tex. 2019). *Binding* arbitration substantially limits the role elected judges and our constitutionally provided judicial process can play in resolving the dispute. *See id.* (noting that a trial court "can set aside the arbitrator's decision only in finite circumstances"). While private parties may decide that the benefits of binding arbitration are well worth the trade-off, the decision to allow private individuals (instead of elected judges) to utilize private procedures (instead of constitutionally authorized and enacted procedural rules and standards) to resolve disputes involving *governmental entities* raises substantially different considerations.

Nevertheless, our resolution of this important issue depends on the legislature's assessment of the wisdom of resolving governmental disputes through private proceedings, not on ours. When deciding whether a dispute must be resolved through binding arbitration instead of through litigation in the courts, "the question is not which forum is quicker, cheaper, or more convenient, but which one the parties picked." *In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 187 (Tex. 2007). Austin Bridge and the River Authority indisputably "picked" binding arbitration as the method to resolve their contract dispute, but because the River Authority is a statutorily created local governmental entity, its "pick" does not ultimately matter. *See ante* at ___. As a political subdivision of the State, the River Authority can only exercise powers that a statute expressly or impliedly confers. *See ante* at ___. Ultimately, the State itself—acting through the legislature— must have authorized the River Authority to resolve this dispute through binding arbitration. If (as I conclude) it didn't, the River Authority's agreement to engage in binding arbitration is void and unenforceable. *See ante* at ___.

2

## A. No express authority

Three statutes are relevant to the question of whether the legislature has expressly authorized the River Authority to engage in *binding* arbitration, but none of them supports the Court's conclusion.

### 1. The GDR Act & the ADR Act

The first relevant statute is the Governmental Dispute Resolution Act (the GDR Act), *see* TEX. GOV'T CODE §§ 2009.001–.055, which expresses the state's policy that "disputes before governmental bodies be resolved as fairly and expeditiously as possible and that each governmental body support this policy by developing and using alternative dispute resolution procedures in appropriate aspects of the governmental body's operations and programs." *Id.* § 2009.002. To support this policy, the GDR Act authorizes governmental entities to "develop and use" the "alternative dispute resolution procedures" described in the second relevant statute, the Alternative Dispute Resolution Procedures Act (the ADR Act). *Id.* §§ 2009.003(1), .051(a).

Similar to the GDR Act, the ADR Act expresses the state's policy to "encourage the peaceable resolution of disputes . . . and the early settlement of pending litigation through voluntary settlement procedures." TEX. CIV. PRAC. & REM. CODE § 154.002. To support this policy, the ADR Act authorizes courts to refer pending disputes for possible resolution through specified alternative-dispute-resolution procedures. *Id.* § 154.021(a). These procedures include "*[n]onbinding* arbitration"[2] and—if "the parties stipulate in advance"—arbitration that is "*binding*" and "enforceable in the same manner as any contract obligation." *Id.* § 154.027

---

[2] Nonbinding arbitration is "a forum in which each party and counsel for the party present the position of the party before an impartial third party, who renders a specific award" that "is *not binding* and serves only as a basis for the parties' further settlement negotiations." TEX. CIV. PRAC. & REM. CODE § 154.027 (emphasis added).

3

(emphases added). Except for binding arbitration to which the parties stipulate in advance, none of the ADR Act's authorized procedures result in a *binding* opinion or resolution.[3]

Read together, the provisions of the GDR Act and the ADR Act would appear to authorize governmental entities to engage in *binding* arbitration, so long as the parties stipulate to that method in advance. But the GDR Act—which specifically addresses the use of alternative dispute resolution by governmental entities—expressly forecloses that conclusion. Anticipating the issue before us today, the Act authorizes governmental entities to engage *only* in the ADR Act's *non-binding* procedures: "Nothing in this chapter authorizes *binding* arbitration as a method of alternative dispute resolution." TEX. GOV'T CODE § 2009.005(c) (emphasis added). In light of this provision, we cannot read the GDR Act or the ADR Act to authorize governmental entities to engage in *binding* arbitration.[4]

### 2. Chapter 271

The third potentially relevant statute, and the one on which the Court hangs its hat, is chapter 271 of the Local Government Code. This statute provides that a local governmental entity that is "authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter *waives sovereign immunity to suit* for the purpose of

---

[3] *See id.* §§ 154.023–.026. The ADR Act's other authorized methods are mediation, mini-trials, moderated settlement conferences, and summary jury trials.

[4] The court of appeals construed subsection 2009.005(c) to mean only that "the [GDR] Act does not waive governmental immunity if a governmental agency decides to engage in *binding* arbitration." *San Antonio River Auth. v. Austin Bridge & Rd., L.P.*, 581 S.W.3d 245, 258 (Tex. App.—San Antonio 2017) (emphasis added). So construed, the court held, "subsection (c) of section 2009.005 does not prohibit the River Authority from engaging in *binding* arbitration." *Id.* (emphasis added). But the issue is not whether subsection (c) *prohibits* the River Authority from engaging in *binding* arbitration. Because the River Authority possesses only the authority that the legislature has expressly or impliedly granted to it, the issue is whether some statute *authorizes* it to engage in binding arbitration. Section 2009.005(c) clearly and unambiguously provides that nothing in the GDR Act (including, therefore, its authorization of the use of methods described in the ADR Act) grants such authorization.

*adjudicating* a claim for breach of the contract, subject to the terms and conditions of this subchapter." TEX. LOC. GOV'T CODE § 271.152 (emphases added). The statute defines the term "adjudication" to include not only litigation, but also "the bringing of an *authorized arbitration proceeding* and prosecution to final resolution in accordance with *any mandatory procedures* established in the contract subject to this subchapter for the *arbitration proceedings*." *Id.* § 271.151(1) (emphases added).

Noting that section 271.152 refers to governmental entities that are "authorized *by statute or the constitution*" to enter into a contract but section 271.151(1) refers to an "authorized arbitration proceeding" without any reference to statutes or the constitution, the Court concludes that "an *authorized* arbitration proceeding" refers to any such proceeding the governmental entity has *contractually* authorized, including a *binding* arbitration proceeding that results in a "final resolution." *Ante* at ___. But even if section 271.151(1) impliedly refers to a "[*contractually*] authorized arbitration proceeding," we must still determine whether the governmental entity was "authorized by statute or the constitution" to enter into that contract authorizing binding arbitration.

Section 271.152 "waives sovereign immunity to suit" for the purpose of "bringing an authorized arbitration proceeding" to enforce a contract against a governmental entity, but it does not itself authorize the arbitration proceeding, and it does not waive immunity at all unless the governmental entity itself is "authorized by statute or the constitution" to enter into the contract. *Id.* §§ 271.151(1), .152. So although section 271.152 waives immunity to allow claims to be resolved through a binding arbitration proceeding, it does so only if the parties have agreed to resolve their dispute through binding arbitration *and* that agreement itself was "authorized by

5

statute or the constitution." *Id.* § 271.152. A local governmental entity that contractually "authorizes" binding arbitration accomplishes nothing if it has no statutory or constitutional authority to engage in binding arbitration.

To be sure, the legislature knows how to statutorily authorize—and even require—governmental entities to resolve disputes through *binding* arbitration, and it has done so in several specific contexts.[5] When a governmental entity that is legislatively authorized to engage in *binding* arbitration agrees to resolve disputes through that process, section 271.152 waives immunity to allow an "adjudication" through the authorized binding arbitration proceeding, which provides a "final resolution." TEX. LOC. GOV'T CODE §§ 271.151(1), .152. But when the governmental entity lacks authority to engage in binding arbitration, its agreement to resolve disputes through that process is not "authorized" by statute or the constitution, and that method of adjudication is unavailable. *See id.* § 271.152. Sections 271.151 and 271.152 waive immunity to allow adjudication of a contract claim, including adjudication through *binding* arbitration when that method is authorized, but they do not themselves authorize governmental entities to authorize that method. *Id.* §§ 271.151(1), .152.

---

[5] *See, e.g.*, TEX. EDUC. CODE § 29.012(d)(6) (requiring certain state agencies to enter an agreement that provides for binding arbitration); TEX. GOVT. CODE § 2258.053(a) (requiring disputes over penalties assessed against government contractors who fail to pay prevailing wage rates to be resolved through binding arbitration); TEX. HEALTH & SAFETY CODE §§ 242.252(a) (permitting certain disputes between state agency and nursing facilities to be resolved through binding arbitration as an alternative to a contested case hearing or judicial proceeding), 775.0221(a) (requiring municipalities and emergency-services districts to resolve certain territory disputes using binding arbitration); TEX. INS. CODE § 2210.554(a) (permitting persons insured by Texas Windstorm Insurance Association to purchase an endorsement requiring binding arbitration of coverage disputes); TEX. LOC. GOVT. CODE §§ 142.064(b) (permitting public employers and police-officer associations to provide for binding arbitration in meet-and-confer agreements), 242.0015(a) (permitting counties and municipalities to resolve certain disputes through binding arbitration); TEX. OCC. CODE § 2027.056(b) (permitting greyhound racetrack association and state greyhound breed registry to resolve certain disputes by binding arbitration); TEX. TAX CODE § 41A.01 (permitting property owners to resolve certain appraisal-review-board appeals through binding arbitration); TEX. TRANSP. CODE § 451.756(b) (permitting certain agreements between public employers and peace officers to provide for binding arbitration).

The Court holds, however, that section 271.154 authorizes the River Authority to engage in *binding* arbitration.[6] Section 271.154 provides:

> Adjudication procedures, including requirements for serving notices or engaging in alternative dispute resolution proceedings before bringing a suit or an arbitration proceeding, that are stated in the contract subject to this subchapter or that are established by the local governmental entity and expressly incorporated into the contract or incorporated by reference are enforceable except to the extent those procedures conflict with the terms of this subchapter.

*Id.* § 271.154.

According to the Court, the "adjudication procedures" this section makes "enforceable" include "an arbitration proceeding," and therefore the section declares "that agreements to arbitrate claims brought under the subchapter are 'enforceable.'" *Ante* at ___; *see also ante* at ___ (construing section 271.154 to provide that "agreements to arbitrate claims under [chapter 271] 'are enforceable'"). This construction contradicts the statute's language, punctuation, and structure.

Focusing first on the statute's language, the Court's construction ignores the distinction that chapter 271 consistently recognizes between "procedures" and "proceedings." As noted, section 271.151(1) defines an "adjudication" to include both litigation and "the bringing of an authorized arbitration *proceeding* and prosecution to final resolution in accordance with any mandatory *procedures* established in the contract subject to this subchapter for the arbitration *proceedings*." TEX. LOC. GOV'T CODE § 271.151(1) (emphases added). This definition distinctly

---

[6] None of the parties relied on section 271.154 in the courts below or in their briefing in this Court. We invited the parties to submit supplemental briefs addressing section 271.154, and they did so. The State of Texas, represented by the Attorney General, also filed an amicus curiae brief, arguing that section 271.154 does not authorize local governmental entities to engage in binding arbitration.

refers separately to an "arbitration *proceeding*" (which must be "authorized") and to any "mandatory *procedures*" that may govern the arbitration proceeding (which must be agreed to in the contract). Under this definition, an "adjudication" includes an "authorized arbitration *proceeding*," and contractually agreed-upon "mandatory *procedures*" may apply to that *proceeding*.

In the same way, section 271.154 addresses contractually incorporated "[a]djudication *procedures*" that may apply to an authorized "arbitration *proceeding*" and makes those procedures (but not the arbitration proceeding itself) "enforceable." *Id.* § 271.154 (emphases added). As the section itself explains, these contractually agreed-upon "[a]djudication procedures" consist of procedural "requirements"—such as a notice requirement or a requirement that the parties engage in nonbinding dispute resolution—that the party must satisfy "*before* bringing a suit or an arbitration *proceeding*." *Id.* § 271.154 (emphasis added).[7]

The Court concedes its unwillingness to even address chapter 271's clear and consistent distinction between "procedures" and "proceedings" because "they derive from the same root word." *Ante* at ___ n.37. On this erroneous foundation, it concludes that, because section 271.151(1) defines "adjudication" to include an "arbitration *proceeding*" and section 271.154

---

[7]As several courts of appeals have recognized, these "adjudication procedures" include requirements like filing deadlines, notice-of-claim requirements, and appraisal requirements. *See*, *e.g.*, *Mission Consol. Indep. Sch. Dist. v. ERO Int'l, LLP*, 579 S.W.3d 123, 126–27 (Tex. App.—Corpus Christi-Edinburg 2019, no pet.) (holding that contractual deadline to file administrative complaint and contractual requirement to initially file a "level 1" appeal were "adjudication procedures" under section 271.154); *Tex. Mun. League Intergovernmental Risk Pool v. City of Abilene*, 551 S.W.3d 337, 345 (Tex. App—Eastland 2018, pet. dism'd) (holding that contractual appraisal provision "constitutes an adjudication procedure under Section 271.154"); *Port Freeport v. RLB Contracting Inc.*, 369 S.W.3d 581, 592 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (recognizing contractual notice-of-claim requirement as an adjudication procedure under section 271.154).

makes "adjudication *procedures*" enforceable, section 271.154 must also make "arbitration *proceedings*" enforceable. *Id.*

The Court suggests that section 271.151(1)'s definition of "adjudication" supports its construction, but like section 271.154, section 271.151(1) clearly distinguishes between *procedures* and *proceedings*. Section 271.154 makes "*[a]djudication procedures*" enforceable, and section 271.151(1) defines "adjudication" to include an "authorized *arbitration proceeding*." Importing the definition into the phrase at issue, section 271.154 does not make "arbitration proceedings" enforceable—it makes "[arbitration proceeding] procedures" (that is, procedures that apply to an arbitration proceeding) enforceable.

By discounting the statute's clear distinction between "adjudication procedures" and "arbitration proceedings," the Court slides easily into its erroneous conclusion that section 271.154, which declares that "adjudication procedures" are enforceable, somehow also declares that an "arbitration proceeding" is enforceable. To reach that conclusion, however, the Court must ignore not just the section's plain language, but also its punctuation and grammatical structure.[8] Section 271.154 consists of a single sentence containing only two commas, which appear in the middle of the single sentence. The commas set off from the rest of the sentence the nonessential phrase that appears between them, which serves only to provide additional information about the noun that proceeds it ("*procedures*").[9] Visually reflecting the punctuation's natural effect, the

---

[8] *See Tex. Health Presbyterian Hosp. of Denton v. D.A.*, 569 S.W.3d 126, 131 (Tex. 2018) ("Punctuation can be helpful, and even determinative, when construing statutes and other written texts.").

[9] *See* THE OXFORD DICTIONARY OF ENGLISH GRAMMAR 279 (2d ed. 2014) (defining "non-defining relative clause" as "a relative clause that gives additional information about the head with which it is associated, but is not a defining relative clause because the noun phrase of which it is a part is already defined and its referent is identifiable" and noting that it "is usually separated from the rest of the sentence in which it occurs by a comma or commas, and if

provision reads as a single sentence in which is embedded a non-essential phrase that describes

the noun that precedes it:

> Adjudication *procedures,*
>> including requirements for serving notices or engaging in alternative dispute resolution *proceedings* before bringing a suit or an arbitration *proceeding,*
>
> that are stated in the contract subject to this subchapter or that are established by the local governmental entity and expressly incorporated into the contract or incorporated by reference are enforceable except to the extent those *procedures* conflict with the terms of this subchapter.

Removing the non-essential phrase, the section reads naturally:

> "Adjudication *procedures* . . . that are stated in the contract subject to this subchapter or that are established by the local governmental entity and expressly incorporated into the contract or incorporated by reference are enforceable except to the extent those *procedures* conflict with the terms of this subchapter."

*Id.* (emphases added). Focusing on the noun and verb in this sentence's structure, the section

provides simply that "[a]djudication procedures . . . are enforceable" if the procedures are stated

in or incorporated into the contract *unless* the procedures conflict with the subchapter's terms. *Id.*

The phase "arbitration proceeding," on which the Court's construction relies, does not

appear in this language at all. Instead, it appears in the non-essential appositive phrase between

the commas, which merely provides more information about the "adjudication procedures."

Contrary to the Court's construction, the appositive phrase does not explain that adjudication

---

it is omitted, the sentence will still make complete sense"). *See also* Bryan A. Gardner, THE REDBOOK: A MANUAL ON LEGAL STYLE § 1.6(a) (3rd ed. 2013) (defining nonrestrictive clause as "one that could be taken out of the sentence without changing the essential meaning" and instructing to use commas to set off the nonrestrictive phrase); Bryan A. Gardner, A DICTIONARY OF MODERN ENGLISH USAGE 766 (2nd ed. 2001) ("Nonrestrictive clauses . . . are so loosely connected with the essential meaning of the sentence that they might be omitted without changing the essential meaning.").

procedures "include" an "arbitration proceeding." Instead, it explains that adjudication procedures include "requirements," and it lists two examples of such "requirements" (serving notice and engaging in ADR), which must be met "*before* bringing a suit or an arbitration proceeding" (that is, before initiating an "adjudication," as section 271.151(1) defines that term). *Id.* Read as written, the section does not make enforceable "adjudication procedures, including . . . arbitration proceedings;" it makes enforceable "adjudication procedures, including" notice and ADR requirements that must be met before initiating an adjudication in the form of a suit or an arbitration proceeding. *Id.* Consistent with section 271.151(1), section 271.154 makes enforceable "procedures" that govern an "authorized arbitration proceeding," but it does not itself authorize an arbitration proceeding. *Id.* §§ 271.151(1), .154.

## B. No implied authority

Having concluded that none of the three potentially relevant statutes expressly authorizes the River Authority to resolve this dispute through binding arbitration, I further conclude that the statutes do not impliedly grant such authority. It is a "general and undisputed proposition of law" that governmental entities have and may wield only powers that are (a) "granted in express words," (b) "necessarily or fairly implied in or incident to the powers expressly granted," or (c) "essential to the accomplishment of the declared objects and purposes of the corporation"—that is, "not simply convenient, but indispensable." *Anderson v. City of San Antonio*, 67 S.W.2d 1036, 1037 (Tex. 1934). Should doubts arise, we presume that the legislature *did not* impliedly grant a power. *See id.* ("Any fair, reasonable, substantial doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied.").

11

The specific power to engage in binding arbitration is not "fairly implied in," "essential to the accomplishment of," or "indispensable" to the River Authority's general power to manage water resources or its more specific power to enter into a contract for that purpose. *See id.*; *see also Town of Lakewood Village v. Bizios*, 493 S.W.3d 527, 536 (Tex. 2016) ("A power is not 'reasonably necessary' unless it is 'indispensable' to the purpose of the municipality."). If it were, section 2009.005(c)—which confirms that nothing in the GDR Act authorizes a governmental entity to engage in binding arbitration—would be meaningless, because all governmental entities would already have that authority by virtue of their general authority to enter into contracts. And if that general authority to contract included the authority to do anything the governmental entity contractually agrees to do, or even anything it is not expressly prohibited from doing, it would no longer be true that governmental entities "may only exercise those powers granted by statute, together with those necessarily implied from the statutory authority conferred or duties imposed." *City of Sherman v. Pub. Util. Comm'n of Tex.*, 643 S.W.2d 681, 686 (Tex. 1983).

The legislature granted the River Authority broad authority to "do all things as are required" to manage the waters within its territory and to "make contracts and to execute instruments necessary or convenient" to accomplish that purpose. Acts of April 8, 1981, 67th Leg., R.S. ch. 60, 1981 Tex. Gen. Laws 123. But the ability to resolve disputes that arise from those contracts through binding arbitration is neither essential to accomplish its purpose nor fairly implied in the authority granted. As a result, the River Authority lacked implied authority to engage

in *binding* arbitration,[10] and thus its agreement to do so in this contract's binding-arbitration clause is unenforceable.[11]

## II.
## Conclusion

I would hold that the San Antonio River Authority lacks statutory or constitutional authority to resolve the parties' dispute through *binding* arbitration, and its agreement to do so is thus void and unenforceable. In the absence of an enforceable arbitration agreement, the arbitration proceeding should be stayed. *See* TEX. CIV. PRAC. & REM. CODE § 171.023(a) ("A court may stay an arbitration commenced or threatened on application and a showing that there is not an agreement to arbitrate."). I would further hold that chapter 271 waives the River Authority's governmental immunity against Austin Bridge's breach-of-contract claims, for the reasons the Court explains. I would reverse the court of appeals' judgment and enter judgment staying the arbitration proceeding and declaring that governmental immunity does not bar Austin Bridge's

---

[10] *See, e.g.*, *Tex. Student Hous. Auth. v. Brazos Cty. Appraisal Dist.*, 460 S.W.3d 137, 143 (Tex. 2015) (holding higher education facilities authority had no implied authority "to acquire, hold, or use property beyond its statutory authorization"); *Cent. Educ. Agency of State of Tex. v. Upshur Cty. Comm'rs Court*, 731 S.W.2d 559, 561 (Tex. 1987) (holding statute granting state education commissioner authority to "promot[e] efficiency and improvement in the public school system" did not impliedly grant commissioner authority to detach territory from one school district and annex it to another); *City of Sherman*, 643 S.W.2d at 686 (holding PUC is "neither expressly nor impliedly granted power to regulate groundwater production or adjudicate correlative groundwater rights"); *Mobil Oil Corp. v. Matagorda Cty. Drainage Dist. No. 3*, 597 S.W.2d 910, 913 (Tex. 1980) (holding county drainage district had no implied authority to annex "lands upon which it cannot perform the services that the water code authorizes it to perform"); *Stauffer v. City of San Antonio*, 344 S.W.2d 158, 160 (Tex. 1961) (holding statute requiring reinstatement of firefighter returning from military service if firefighter is physically and mentally fit did not impliedly grant state commission authority to conduct hearings and decide that issue).

[11] This holding does not mean that the parties' *entire contract* is unenforceable, because the unenforceable arbitration clause is severable from the rest of the agreement. *See In re Poly-Am., L.P.*, 262 S.W.3d 337, 360 (Tex. 2008) (citing *Williams v. Williams*, 569 S.W.2d 867, 871 (Tex. 1978)) (holding an illegal contract provision "may generally be severed so long as it does not constitute the essential purpose of the agreement").

breach-of-contract claims. Because the Court affirms the court of appeals' judgment, I respectfully dissent.

_____
Jeffrey S. Boyd
Justice

Opinion delivered: May 1, 2020