# IN THE SUPREME COURT OF TEXAS

No. 17-0256

TEXAS HEALTH PRESBYTERIAN HOSPITAL OF DENTON, MARC WILSON, M.D., AND
ALLIANCE OB/GYN SPECIALISTS, PLLC D/B/A OB/GYN SPECIALISTS, PLLC,
PETITIONERS,

v.

D.A. AND M.A., INDIVIDUALLY AND AS NEXT FRIENDS OF A.A., A MINOR,
RESPONDENTS

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS

**Argued October 9, 2018**

JUSTICE BOYD delivered the opinion of the Court.

This permissive interlocutory appeal concerns the Texas Medical Liability Act's emergency-medical-care provision, which requires claimants asserting certain medical-malpractice claims to prove "wilful and wanton negligence." We hold that the provision applies to claims arising from emergency medical care provided in a hospital's obstetrical unit regardless of whether the patient was first evaluated or treated in a hospital emergency department. We reverse the court of appeals' judgment and render judgment reinstating the trial court's partial summary judgment in the petitioners' favor.

# I.
## Background

Baby A.A. was born in 2011 at the Texas Health Presbyterian Hospital of Denton. His mother elected to have labor induced at thirty-nine weeks and checked into the hospital's obstetrical unit the evening before the scheduled procedure. The process the next day was initially uneventful. But at the time of actual delivery, the baby had difficulty moving through the birth canal. The mother's obstetrician, Dr. Marc Wilson, used forceps to deliver the baby's head, but the baby's shoulder became stuck on his mother's pelvis, a complication called shoulder dystocia. After other maneuvers failed, Dr. Wilson reached into the birth canal and physically pulled the baby's arm across his chest, dislodging the baby's shoulder. The baby was soon delivered, but he suffered injuries to the network of nerves that runs through his shoulder.

The baby's mother and father filed this suit, individually and as the baby's next friends (collectively, the family), naming Dr. Wilson, his practice group, and the hospital (collectively, Dr. Wilson) as defendants. Among other things, the family alleged that Dr. Wilson and the attending nurse negligently performed the maneuvers that ultimately dislodged the baby's shoulder. Dr. Wilson disputed that he or the nurse acted negligently or that their actions caused the baby's injury. Relying on section 74.153 of the Texas Medical Liability Act,[1] he also asserted that the family cannot recover based on claims asserting ordinary negligence. Instead, he argued, because the family's claims arise from the provision of emergency medical care in a hospital obstetrical unit, they can only recover by proving that Dr. Wilson acted with willful and wanton negligence.

---

[1] TEX. CIV. PRAC. & REM. CODE §§ 74.001–.507.

The trial court granted partial summary judgment, agreeing with Dr. Wilson that he did not cause the shoulder dystocia, that the measures he took to dislodge the baby's shoulder constituted emergency medical care,[2] and that the Act requires the family to prove willful and wanton negligence. At the family's request, the court permitted an interlocutory appeal on two issues: (1) whether the Act requires the family to prove willful and wanton negligence, and (2) what conduct qualifies as willful and wanton negligence. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(d) (authorizing trial courts to permit interlocutory appeals of certain controlling legal questions). The court of appeals accepted the permissive appeal, *see id.* § 51.014(f), but only on the first issue.[3] Holding that the Act does not require the family to prove willful and wanton negligence, the court of appeals reversed the summary judgment and remanded the case to the trial court. 514 S.W.3d 431 (Tex. App.—Fort Worth 2017). We granted Dr. Wilson's petition for review.

---

[2] The Act defines "emergency medical care" to mean

> bona fide emergency services provided after the sudden onset of a medical or traumatic condition manifesting itself by acute symptoms of sufficient severity, including severe pain, such that the absence of immediate medical attention could reasonably be expected to result in placing the patient's health in serious jeopardy, serious impairment to bodily functions, or serious dysfunction of any bodily organ or part. The term does not include medical care or treatment that occurs after the patient is stabilized and is capable of receiving medical treatment as a nonemergency patient or that is unrelated to the original medical emergency.

*Id.* § 74.001(a)(7).

[3] The trial court did not permit an appeal on the issues of whether Dr. Wilson caused the shoulder dystocia and whether his maneuvers constituted emergency medical care, and the court of appeals did not accept the issue of what conduct constitutes willful and wanton negligence. We accept the trial court's conclusions on those issues for purposes of this interlocutory appeal, but we express no opinion on those conclusions.

3

## II.
## Section 74.153

The sole issue before us is whether section 74.153 applies to the family's claims against Dr. Wilson. Section 74.153 requires a health-care-liability claimant to prove that the defendant physician or health care provider breached the applicable standard of care with willful and wanton negligence if the claim arises out of the provision of emergency medical care

> in a hospital emergency department or obstetrical unit or in a surgical suite immediately following the evaluation or treatment of a patient in a hospital emergency department.

TEX. CIV. PRAC. & REM. CODE § 74.153.

Dr. Wilson argues (and the trial court agreed) that this section applies because the family's claims arise out of emergency medical care provided in a hospital obstetrical unit. Under Dr. Wilson's reading, section 74.153 requires willful and wanton negligence if the claim arises from the provision of emergency medical care

> [1]  in a hospital
> [a]  emergency department or
> [b]  obstetrical unit or
> [2]  in a surgical suite immediately following the evaluation or treatment of a patient in a hospital emergency department.

The family argues (and the court of appeals agreed) that the section does not apply because Dr. Wilson did not provide the care in an obstetrical unit "immediately following the evaluation or treatment of [the] patient in a hospital emergency department." Under their reading, the statute requires willful and wanton negligence when the claim arises from the provision of emergency medical care

> [1]  in a
> [a]  hospital emergency department or
> [b]  obstetrical unit or

4

　　　　　　　　　　　　　[c]　　in a surgical suite
　　　　　　[2]　　immediately following the evaluation or treatment of a
　　　　　　　　　　patient in a hospital emergency department.

The issue is whether the section's last phrase (the "immediately following" phrase) applies to and modifies only the reference to care provided "in a surgical suite" or the references to care provided in all three locations.[4]

The court of appeals concluded—and the family does not dispute—that Dr. Wilson's proposed construction is grammatically correct and reasonable.[5] 514 S.W.3d at 439. But the court concluded that the family's construction is also grammatically correct and reasonable, so the statute is ambiguous on the relevant issue. *Id.*[6] Because the statute is ambiguous, the court turned to construction canons and extrinsic aids—including legislative history and individual legislators' statements—to determine its meaning. *Id.* at 439–43. Based on these extrinsic sources, the court held that section 74.153 "does not apply to emergency medical care provided in an obstetrical unit when the patient was not evaluated or treated in a hospital emergency department immediately prior to receiving the emergency medical care." *Id.* at 444.

---

[4] Other courts of appeals have addressed and applied section 74.153, but they have not directly considered the issue presented here. *See, e.g., Burleson v. Lawson*, 487 S.W.3d 312, 321–22 (Tex. App.—Eastland 2016, no pet.); *Christus Health Se. Tex. v. Licatino*, 352 S.W.3d 556, 562–63 (Tex. App.—Beaumont 2011, no pet.); *Turner v. Franklin*, 325 S.W.3d 771, 778–80 (Tex. App.—Dallas 2010, pet. denied). At least one court has relied on and followed the Fort Worth court's opinion in this case. *See Glenn v. Leal*, 546 S.W.3d 807, 811 (Tex. App.—Houston [1st Dist.] 2018, pet. pending).

[5] As Dr. Wilson notes, the State Bar's pattern jury charge committee agrees with his construction. *See* Committee on Pattern Jury Charges of the State Bar of Texas, *Texas Pattern Jury Charges: Malpractice, Premises & Products* § 51.18(D) (2016) (proposing jury questions asking whether the defendant's negligence occurred outside or inside "the [emergency department] [obstetrical unit] [surgical suite immediately following the evaluation or treatment in the hospital emergency department]").

[6] "A statute is ambiguous if its words are susceptible to two or more reasonable interpretations, and we 'cannot discern legislative intent in the language of the statute itself.'" *Tex. State Bd. of Exam'rs of Marriage & Family Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 41 (Tex. 2017) (quoting *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 639 (Tex. 2010)).

We disagree with the court of appeals' conclusion that the family's proposed construction is reasonable. Based on section 74.153's text and context, we conclude that Dr. Wilson offers the only reasonable construction. Because the section is not ambiguous, we do not consider extrinsic aids and instead conclude based on the statute's language that the "immediately following" phrase applies only to the reference to a surgical suite, and not to all three locations.

## A.      The Text and Context

We review this question of statutory construction de novo. *DeQueen*, 325 S.W.3d at 635. In many statutory-construction cases, the parties dispute the meaning of particular words or phrases, and we construe the statute by applying the terms' common, ordinary meaning unless the text supplies a different meaning or the common meaning leads to absurd results. *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018). Here, however, the parties do not dispute the meaning of any of section 74.153's words or phrases. Instead, they dispute the relationships between those words and phrases.

Dr. Wilson relies on several textual features to support his argument that the family's construction is unreasonable. We find most to be unhelpful in this context. For example, Dr. Wilson contends that the omission of a comma between the reference to "surgical suite" and the "immediately following" phrase confirms his proposed meaning. He argues that if the legislature had intended the "immediately following" phrase to apply to all three locations, it would have inserted a comma to indicate that the section applies to claims based on the provision of emergency medical care

> in a hospital emergency department or obstetrical unit or in a surgical suite**[,]** immediately following the evaluation or treatment of a patient in a hospital emergency department.

6

Because section 74.153 lacks the bracketed comma, he asserts, the "immediately following" phrase modifies only the reference to "surgical suite."

Punctuation can be helpful, and even determinative, when construing statutes and other written texts. *Sullivan v. Abraham*, 488 S.W.3d 294, 297 (Tex. 2016) (explaining that punctuation "is a permissible indicator of meaning" and "will often determine whether a modifying phrase or clause applies to all that preceded it or only to a part"). But unlike the phrase at issue in *Sullivan*, the phrase at issue here contains no comma or other punctuation at all. In this sense, section 74.153 is like the statute the Court of Criminal Appeals found to be ambiguous in *Ludwig v. State*, 931 S.W.2d 239 (Tex. Crim. App. 1996). That statute created an exception to the spousal privilege that applies when a criminal defendant is charged with a "crime against the person of any minor child or any member of the household of either spouse." *Id.* at 241. Because the defendant was accused of killing his five-year-old nephew (a minor who was not the child "of either spouse"), the issue was whether the phrase "of either spouse" modified only the reference to a "member of the household" or also the earlier reference to a "minor child." Noting that a comma after "household" would have indicated that "of either spouse" modified both (e.g., "crime against the person of any minor child or any member of the household**[,]** of either spouse"), but a comma after "child" would have indicated that it modified only "member of the household" (e.g., "crime against the person of any minor child**[,]** or any member of the household of either spouse"), the Court found the phrase to be ambiguous because "it is not punctuated at all." *Id.* at 242.

In the same way, the lack of any particular punctuation in the section 74.153 phrase provides no clear indication of its meaning. As Dr. Wilson notes, a comma after "surgical suite" would have indicated that the "immediately following" phrase applies to all items in the series.

7

But a comma after the reference to "obstetrical unit" would have indicated that the "immediately following" phrase modifies only the reference to "surgical suite," thus requiring willful and wanton negligence when the claim arises from the provision of emergency medical care

> in a hospital emergency department or obstetrical unit**[,]** or in a surgical suite immediately following the evaluation or treatment of a patient in a hospital emergency department.

While the absence of one comma might indicate one meaning, the absence of the other comma indicates the opposite meaning. In the absence of both commas, the lack of punctuation provides no clear indication either way.

Similarly, Dr. Wilson argues that the family's construction is unreasonable because the rules of proper grammar suggest that modifiers should always be placed near the words or phrases they modify.[7] In light of that grammar rule, we have said that modifying phrases "should be applied only to the portion of the sentence immediately preceding it." *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 185 (Tex. 2012) (internal quotation marks omitted); *see also City of Dallas v. Stewart*, 361 S.W.3d 562, 571 n.14 (Tex. 2012) ("[A] qualifying phrase should be applied only to the portion of the sentence immediately preceding it.") (internal quotation marks omitted).

Like punctuation, grammar rules can be crucial to proper construction. ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 141 (2012) [hereinafter READING LAW] ("Grammatical usage is one of the means . . . by which the sense of a

---

[7] *See, e.g.*, WILLIAM STRUNK, JR. & E.B. WHITE, THE ELEMENTS OF STYLE 30 (3d ed. 1999) ("[M]odifiers should come, if possible, next to the words they modify."); BRYAN A. GARNER, THE REDBOOK: A MANUAL ON LEGAL STYLE § 10.41, at 207 (3d ed. 2013) ("The general rule is that an adverb should appear as near as possible to the word it modifies. . . . A misplaced adverb can obscure or wholly alter a sentence's meaning."); *see also* THE CHICAGO MANUAL OF STYLE § 5.155 (15th ed. 2003) ("[T]he adverb should generally be placed as near as possible to the word it is intended to modify."); RICHARD C. WYDICK, PLAIN ENGLISH FOR LAWYERS 44 (2d ed. 1985) ("Modifying words tend to do their work on whatever you put them near. Therefore, as a general rule, put modifying words as close as you can to the words you want them to modify.").

statute is conveyed."). But the grammar rule on which Dr. Wilson relies does not independently make the family's construction of section 74.153 unreasonable. If the Legislature intended the "immediately following" phrase to modify the references to all three locations, it could have placed the modifier near each location reference by repeating the phrase three times, but that would not have been a normal or practical use of the English language. Alternatively, as we have explained, it could have inserted a comma after "surgical suite," but it didn't. We are left with an unpunctuated phrase containing a modifier that—in light of its location within the phrase—could modify the entire series or only the last item in the series. Under these circumstances, we do not agree that the grammar rule providing that modifiers "should" be placed near the modified words renders the family's construction unreasonable.[8]

But we do agree with Dr. Wilson that section 74.153 contains two features that make the family's proposed construction unreasonable. First, the family's proposed construction fails to attribute any meaning or give any effect to the section's two separate uses of the prepositional phrase "in a," once before the reference to "hospital emergency department" and then again before the reference to "surgical suite." The repeated use of the phrase "in a" is consistent with Dr. Wilson's proposed construction, requiring willful and wanton negligence when the claim arises from the provision of emergency medical care

    [1]    ***in a*** hospital

---

[8] Dr. Wilson's grammar-based argument raises themes similar to the parties' competing arguments based on the series-qualifier canon and the last-antecedent canon. *See Sullivan*, 488 S.W.3d at 297 (describing the two canons). As explained below, we need not rely on such canons because the statutory language is unambiguous. And we will not rely on such extrinsic aids to create an ambiguity. *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865–66 (Tex. 1999) ("[I]f a statute is unambiguous, rules of construction or other extrinsic aids cannot be used to create ambiguity."). In any event, as we explained in *Sullivan*, sometimes both the series-qualifier canon and the last-antecedent canon "might *reasonably* apply" to the text at issue, "but they cannot both apply because they point in different directions." *Id.* (emphasis added). In such a case, "without more, neither [canon] aids in our understanding of the statute." *Id.*

> [a] emergency department or
> [b] obstetrical unit or
> [2] ***in a*** surgical suite immediately following the evaluation or
> treatment of a patient in a hospital emergency department.

But it is inconsistent with the family's proposed construction, requiring willful and wanton negligence when the claim arises from the provision of medical care

> [1] ***in a***
> [a] hospital emergency department or
> [b] obstetrical unit or
> [c] ***in a*** surgical suite
> [2] immediately following the evaluation or treatment of a
> patient in a hospital emergency department.

Under the family's construction, the deletion of the second use of "in a" would not alter the section's meaning at all—in fact, it would make that meaning even more clear. But we cannot simply ignore the fact that the statute uses "in a" before the references to both "hospital emergency department" and "surgical suite," and yet not before the reference to "obstetrical unit." *See Rodriguez*, 547 S.W.3d at 838 (noting that we must endeavor to give effect to a statute's "every word"); *Centerpoint Builders GP, LLC v. Trussway, Ltd.*, 496 S.W.3d 33, 36 (Tex. 2016) ("[W]e may not omit or gloss over verbiage in an attempt to reclaim clarity."). By repeating the use of "in a" before the third item in the series, the language requires the conclusion that the third item be treated differently. *See, e.g.*, READING LAW at 149 (noting that the insertion of a determiner between items in a phrase "tends to cut off the modifying phrase so that its backwards reach is limited"). That is, the use of "in a" before "surgical suite" signifies that the modifying phrase "immediately following the evaluation or treatment of a patient in a hospital emergency department" applies only to "surgical suite." It simply permits no other reasonable reading.

10

Other courts have conducted similar grammatical analyses and have come to the same conclusion. In *United States v. Pritchett*, the D.C. Circuit construed a provision stating that a statute did not apply "*to* marshals, sheriffs, prison or jail wardens, or their deputies, policemen or other duly appointed law-enforcement officers, *or to* members of the Army, Navy, or Marine Corps of the United States or of the National Guard or Organized Reserves *when on duty*." 470 F.2d 455, 456 (D.C. Cir. 1972) (emphases added) (quoting D.C. CODE § 22-3205). The court held that the postpositive modifier "when on duty" applied only to the second half of the list: "or to members of the Army, Navy, or Marine Corps of the United States or of the National Guard or Organized Reserves." *Pritchett*, 470 F.2d at 460. It based its holding primarily on the inclusion of the "disjunctive 'or'" before the reference to "members of the Army, Navy, or Marine Corps." *Id.* at 459; *see* READING LAW at 150 (arguing that the "court was right about the result . . . , but it was the *to* rather than the *or* that set the last phrase apart").

And in *United States v. Ron Pair Enterprises, Inc.*, the United States Supreme Court construed a statute that provided for the recovery of "interest on such claim, *and any* reasonable fees, costs, or charges *provided for under the agreement*." 489 U.S. 235, 241–42 (1989) (emphases added). In holding that the phrase "provided for under the agreement" did not modify the earlier reference to "interest on such claim," the Court relied not only on the comma after "claim" but also on the inclusion of the "conjunctive words 'and any,'" which "separated" the reference to interest from the reference to fees, costs, and charges. *Id.* at 241.

In the same way, we must give effect to section 74.153's second use of the phrase "in a." If the statute used that phrase just once—referring to the provision of emergency medical care

> ***in a*** hospital emergency department or obstetrical unit or surgical
> suite immediately following the evaluation or treatment of a patient
> in a hospital emergency department

—the family's proposed construction would be reasonable. It might also be reasonable if the statute used the phrase repeatedly for each item in the series, referring to the provision of emergency medical care

> ***in a*** hospital emergency department or ***in an*** obstetrical unit or ***in a***
> surgical suite immediately following the evaluation or treatment of
> a patient in a hospital emergency department.

We agree with Dr. Wilson that the family's proposed construction is unreasonable because it requires us to ignore the second use of the prepositional phrase "in a" and renders that language meaningless.

A second feature of section 74.153 also convinces us that the family's proposed construction is unreasonable. If—as the family asserts—the "immediately following" phrase modified the entire series, then it would necessarily modify the reference to care provided "in a hospital emergency department." But if that were true, the section would apply when the claim arises from "the provision of emergency medical care in a hospital emergency department immediately following the evaluation or treatment of a patient in a hospital emergency department." Because the phrase "emergency medical care" includes medical "treatment" provided under emergency circumstances,[9] this construction would create a redundancy that

---

[9] *See* TEX. CIV. PRAC. & REM. CODE §§ 74.001(a)(7) (defining "emergency medical care" to mean "bona fide emergency services," but not including "medical care or treatment that occurs after the patient is stabilized and is capable of receiving medical treatment as a nonemergency patient or that is unrelated to the original medical emergency"), .001(a)(19) (defining "medical care" to mean "any act defined as practicing medicine . . . on behalf of a patient during the patient's care, treatment, or confinement"); TEX. OCC. CODE § 151.002(a)(13) (defining "practicing medicine" to mean "the diagnosis, treatment, or offer to treat a mental or physical disease or disorder"). Section 74.153 confirms that "emergency medical care" includes "treatment" by requiring the claimant to "prove that

deprives the phrase of any linguistic sense. To make any sense at all, this construction would require that the patient receive treatment in the emergency department that does *not* qualify as emergency medical care and then receive treatment in the emergency department that *does* qualify as emergency medical care.

Perhaps we could read the statute that way, but we agree with Dr. Wilson that this construction would render the statute "ineffective when it is needed most." So construed, section 74.153 would not protect emergency-department physicians and providers who provide emergency medical care when the patient first arrives in the emergency department, because that care necessarily could not be provided "immediately following the evaluation or treatment of a patient in a hospital emergency department." Although the family argues that not all care provided in an emergency department constitutes emergency medical care, their proposed construction would nevertheless deprive providers of the section's heightened protection for medical care first provided in the emergency department that *does* constitute emergency medical care.

Section 74.153 is certainly not a model of clarity, particularly in light of its lack of any helpful punctuation. But its repeated use and placement of the prepositional phrase "in a" and the repeated references to treatment provided "in a hospital emergency department" lead us to conclude that the family's proposed construction is simply not reasonable. As a result, we hold that the statute is not ambiguous and that the "immediately following" phrase modifies the reference to care provided in a surgical suite but not the references to care provided in a hospital emergency department or obstetrical unit.

---

the treatment or lack of treatment . . . departed from accepted standards of medical care" by showing willful and wanton negligence. TEX. CIV. PRAC. & REM. CODE § 74.153.

13

**B. Extrinsic Aids**

The family urges us to consider various extrinsic construction aids that they contend confirm that the legislature intended their proposed construction. In particular, they point to section 74.153's legislative drafting history and to statements individual legislators made during the legislative process. As we have repeatedly explained, however, we do not rely on such extrinsic aids to construe unambiguous statutory language. *Sullivan*, 488 S.W.3d at 299 ("We, however, do not resort to extrinsic aides, such as legislative history, to interpret a statute that is clear and unambiguous.")[10] To the extent our objective in construing a statute is to determine the legislature's intent, we discover that intent within the language the legislature enacted. *Id.* A statute's unambiguous language "is the surest guide to the Legislature's intent," *id.* (quoting *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 507 (Tex. 2012)), because "the Legislature expresses its intent by the words it enacts and declares to be the law," *Molinet v. Kimbrell*, 356 S.W.3d 407, 414 (Tex. 2011).

The family notes, however, that section 311.023 of the Code Construction Act permits courts to consider a statute's legislative history "whether or not the statute is considered ambiguous on its face." *See* TEX. GOV'T CODE § 311.023(3). Although this section may grant us legal

---

[10] *See also Rodriguez*, 547 S.W.3d at 838 ("When a statute is not ambiguous on its face, it is inappropriate to use extrinsic aids to construe the unambiguous statutory language."); *In re Allcat Claims Serv., L.P.*, 356 S.W.3d 455, 467 (Tex. 2011) ("The language is not ambiguous and, as such, opinions from senators, newspapers, or other sources cannot override the text approved by the Legislature."); *City of Rockwall v. Hughes*, 246 S.W.3d 621, 626 (Tex. 2008) ("When a statute's language is clear and unambiguous, it is inappropriate to resort to rules of construction or extrinsic aids to construe the language."); *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 652 n.4 (Tex. 2006) ("If the text is unambiguous, we must take the Legislature at its word and not rummage around in legislative minutiae."); *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006) ("If the statute is clear and unambiguous, we must apply its words according to their common meaning without resort to rules of construction or extrinsic aids.").

permission,[11] not all that is lawful is beneficial.[12] Constitutionally, it is the courts' responsibility to construe statutes, not the legislature's.[13] In fulfilling that duty, we do not consider legislative history or other extrinsic aides to interpret an unambiguous statute because the statute's plain language most reliably reveals the legislature's intent. *Sullivan*, 488 S.W.3d at 299. We have therefore "repeatedly branded" reliance on extrinsic aids as "'improper' and 'inappropriate' when statutory language is clear." *BankDirect*, 519 S.W.3d at 84.

Here, the family relies heavily on statements individual legislators made during floor debates, explaining that, in their view, section 74.153 would apply to claims arising from emergency medical care provided in an obstetrical unit only if the patient was first treated in the emergency department.[14] But statements explaining *an individual legislator's* intent cannot reliably describe *the legislature's* intent. *See* READING LAW at 375 ("To be 'a government of laws, not of men' is to be governed by what the laws *say*, and not by what the people who drafted the

---

[11] *See Ojo v. Farmers Grp., Inc.*, 356 S.W.3d 421, 438 n.13 (Tex. 2011) (observing that in light of section 311.023(3), "a court never acts illegally when it considers legislative history") (Jefferson, C.J., concurring).

[12] *See I Corinthians* 10:23 ("All things are lawful; but not all things are expedient. All things are lawful; but not all things edify.") (American Standard Version).

[13] *Molinet*, 356 S.W.3d at 414–15 ("It is the Legislature's prerogative to enact statutes; it is the judiciary's responsibility to interpret those statutes according to the language the Legislature used . . . ."); *see also BankDirect Capital Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 85 (Tex. 2017) (noting "the courts' singular duty to interpret the laws").

[14] Specifically, Senator Bill Ratliff asserted that the section "does not apply to emergencies that arise during surgery or labor and delivery," and instead applies only "to emergencies that exist when the patient is brought to the ER and still exists when the patient goes immediately to an OB unit or surgical suite from the ER." S.J. of Tex., 78th Leg., R.S. 5004 (2003) (statement of Sen. Bill Ratliff). Similarly, Representative Joe Nixon stated that "it is the intent of this legislation that emergency situations where you do not have a prior relationship with the patient is the one given the protection. If you have a prior relationship with a patient, and you know about their medical history and their background you should not be given the protection to the same extent as someone who just shows up in the emergency room." H.J. of Tex., 78th Leg., R.S. 6040 (2003) (statement of Rep. Joe Nixon). As the court of appeals noted, the Senate voted unanimously to publish portions of these debates "to establish legislative intent regarding" the bill. S.J. of Tex., 78th Leg., R.S. 5003 (2003).

laws intended."). An individual legislator's statements—even those of the bill's author or sponsor—do not and cannot describe the understandings, intentions, or motives of the many other legislators who vote in favor of a bill. *AT & T Commc'ns of Tex., L.P. v. Sw. Bell Tel. Co.*, 186 S.W.3d 517, 528–29 (Tex. 2006) ("[T]he statement of a single legislator, even the author and sponsor of the legislation, does not determine legislative intent."); *see also Molinet*, 356 S.W.3d at 414 ("Statements made during the legislative process by individual legislators or even a unanimous legislative chamber are not evidence of the collective intent of the majorities of both legislative chambers that enacted a statute.").

Ultimately, our responsibility is to construe the language the legislature enacted, not to determine what the legislature or any individual legislators may have meant to enact. *See Allcat*, 356 S.W.3d at 467 ("Political advocacy may influence votes on important legislative initiatives, but it cannot control a court's ultimate responsibility to decide the law that was finally enacted or adopted."); READING LAW at 375. By focusing on the language enacted, we encourage the legislature to enact unambiguous statutes, we discourage courts from usurping the legislature's role of deciding what the law should be, and we enable citizens to rely on the laws as published without having to worry that they may carry some hidden meaning. *Fitzgerald*, 996 S.W.2d at 866; *see also Molinet*, 356 S.W.3d at 414 ("Construing clear and unambiguous statutes according to the language actually enacted and published as law—instead of according to statements that did not pass through the law-making processes, were not enacted, and are not published as law—ensures that ordinary citizens are able to rely on the language of a statute to mean what it says.").

We recognize, of course, that the legislature may sometimes mistakenly enact language that—though unambiguous—does not accurately reflect its collective intent. *Brown v. De La*

*Cruz*, 156 S.W.3d 560, 566 (Tex. 2004) ("It is at least theoretically possible that legislators—like judges or anyone else—may make a mistake."). But even when that occurs, our duty is to fairly construe and apply the language enacted and leave it to the legislature to correct its own errors or omissions. *See DeQueen*, 325 S.W.3d at 637–38 ("Courts are not responsible for omissions in legislation [and] are not empowered to 'fix' the mistake by disregarding direct and clear statutory language that does not create an absurdity.").

## III.
### Conclusion

For the reasons explained, we conclude that section 74.153 requires claimants to prove willful and wanton negligence when their claims arise out of the provision of emergency medical care in a hospital obstetrical unit, regardless of whether that care is provided immediately following an evaluation or treatment in the hospital's emergency department. This is the only reasonable construction of the statute's language, and we "must take the Legislature at its word, respect its policy choices, and resist revising a statute under the guise of interpreting it." *Christus Health Gulf Coast v. Aetna, Inc.*, 397 S.W.3d 651, 654 (Tex. 2013). We reverse the court of appeals' judgment, reinstate the trial court's partial summary judgment, and remand the case to the trial court for further proceedings.

_____
Jeffrey S. Boyd
Justice

Opinion delivered: December 21, 2018