**Opinion issued December 31, 2024.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-23-00043-CV**

———————————

**THE STATE OF TEXAS AND NPT ASSOCIATES, Appellants**

**V.**

**LABORATORY CORPORATION OF AMERICA HOLDINGS D/B/A LABORATORY CORPORATION OF AMERICA, Appellee**

---

**On Appeal from the 250th District Court[1]**
**Travis County, Texas**
**Trial Court Case No. D-1-GV-13-000415**

---

**O P I N I O N**

---

[1] Pursuant to its docket equalization authority, the Supreme Court of Texas transferred this appeal from the Court of Appeals for the Third District of Texas to this Court. *See* TEX. GOV'T CODE § 73.001 (authorizing transfer of cases). We are unaware of any conflict between precedent of that court and that of this court on any relevant issue. *See* TEX. R. APP. P. 41.3.

In this appeal we consider whether certain unlawful acts under the Texas Medicaid Fraud Prevention Act ("TMFPA") require materiality as a matter of law. *See* TEX. HUM. RES. CODE §§ 36.002(1), (2), (4)(B). The State and Relator NPT Associates (collectively on appeal, the "State") alleged that Laboratory Corporation of America Holdings d/b/a Laboratory Corporation of America ("LabCorp") violated the TMFPA by failing to comply with Texas Medicaid's best-price regulations. The trial court granted summary judgment for LabCorp, and the State appeals. We hold that the trial court erred in granting summary judgment for LabCorp because certain of the State's claims do not require a showing of materiality and there is a genuine issue of material fact as to materiality in the remaining claims. We reverse the trial court's judgment and remand for further proceedings.

## Background

This case concerns medical services provided to indigent individuals in Texas through Medicaid on a fee-for-service basis. Under this model, a service provider who treats a Medicaid beneficiary submits a reimbursement request to the State Medicaid agency, and the State pays the bill after confirming the individual's eligibility and need for the service. The State then seeks reimbursement from the federal government for a percentage of the cost, typically on a quarterly basis.

Texas Medicaid serves more than 4 million people and accounts for almost 30% of the State's budget.[2] The program serves children and their caretakers, pregnant women, and individuals over 65 or those with disabilities. Texas, like other states, has "developed intricate statutory and administrative regimes over the course of many decades" to deliver healthcare services through the Medicaid system. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 581–82 (2012).

Among these regimes are the best-price regulations at issue in this case. Texas law provides that:

> A person is subject to administrative actions or sanctions if the person submits, or causes to be submitted, a claim for payment by the Medicaid or other HHS program:
>
> . . .
>
> > (10) for an item or service where the charges or costs for that item or service were discounted for the public, privately insured persons, or private-pay persons for the same item or service, including a claim submitted under Title VIII (Medicare).

1 TEX. ADMIN. CODE § 371.1653(10). The Texas Medicaid Provider Procedures Manual (the "Manual") requires Texas Medicaid providers to certify compliance with state laws and regulations, including Texas Medicaid's best-price regulations. The Manual states:

---

[2]     *Texas Medicaid and Chip Reference Guide* 2–3 (13th Ed. 2020), https://www.hhs.texas.gov/sites/default/files/documents/laws-regulations/reports-presentations/2020/medicaid-chip-perspective-13th-edition/13th-edition-complete.pdf (last viewed November 13, 2024).

Provider Certification/Assignment

> Medicaid service providers are required to certify compliance with or agree to various provisions of state and federal laws and regulations. After submitting a signed claim to TMHP [Texas Medicaid & Health Partnership], the provider certifies the following:
>
> . . . .
>
> The provider will not bill the Medicaid program for services that are provided or offered to non-Medicaid patients, without charge, discounted or reduced in any fashion including, but not limited to, sliding scales or advertised specials. Any reduced, discounted, free, or special fee advertised to the public must also be offered to Medicaid clients.

Manual § 2.27, 2005 ed. at p. 2–7.[3] According to the State, Texas Medicaid's best-price regulations ensure that any provider who chooses to participate in the Medicaid program charges no higher rates to the Texas taxpayer than it charges to private customers.

The Texas Medicaid Fraud Prevention Act ("TMFPA") was first enacted in 1995 and creates a "state enforcement action" against any person or entity that defrauds the Texas Medicaid program by committing one or more of thirteen enumerated "unlawful acts." TEX. HUM. RES. CODE § 36.001–.132; *see also* Act of May 26, 1995, 74th Leg., R.S., ch. 824, §1, 1995 Tex. Gen. Laws 4202 (describing

---

[3] The version of this language in the record is taken from the 2005 version of the Manual. The parties do not dispute that the same or similar language is found in each subsequent version of the Manual.

4

the act as relating to the prevention of Medicaid fraud; imposing civil penalties).[4] The statute imbues the attorney general with broad investigative and enforcement authority and, via *qui tam* provisions, deputizes private citizens to pursue a TMFPA action on the government's behalf. TEX. HUM. RES. CODE §§ 36.051, .055, .101; *In re Xerox Corp.*, 555 S.W.3d 518, 524–25 (Tex. 2018) (explaining TMFPA is tool for targeting fraud against Texas Medicaid program and securing program's integrity). The statute authorizes substantial monetary penalties for fraud on the system, as well as administrative sanctions, such as suspension or revocation of license, permit, or certification, and exclusion from the Medicaid program. TEX. HUM. RES. CODE § 36.005; *Xerox*, 555 S.W.3d at 525.

In 2013, relator NPT Associates commenced a *qui tam* action under the TMFPA in Travis County against LabCorp. The Texas Office of the Attorney General subsequently launched an investigation into LabCorp's billing practices. After concluding its investigation, the State intervened in the action filed by NPT by filing a petition in January 2021. In the petition, the State alleged that LabCorp violated both Texas Medicaid's best-price regulations and its anti-kickback rules. Only the State's best-price allegations against LabCorp are at issue in this appeal.

---

[4]     The Legislature recently amended the Texas Medicaid Fraud Prevention Act and changed its name to the Texas Health Care Program Fraud Prevention Act. *See* Act of May 16, 2023, 88th Leg., R.S., ch. 273, §§ 2–11, 2023 Tex. Sess. Law Serv. 585, 587 (codified at TEX. HUM. RES. CODE §§ 36.001–.132).

The State alleges that LabCorp entered into discounted pricing agreements with health insurance companies, such as Humana, Cigna, UnitedHealthcare, and Blue Cross and Blue Shield of Texas. According to the State, LabCorp provided special-price-request ("SPR") discounted pricing to some Texas doctors and other healthcare providers for certain patients. The State alleged that LabCorp had "Out of Network Laboratory Services Agreements" with healthcare providers where LabCorp waived laboratory service charges for patients whose health insurance coverage required the patient to use another lab for services. Finally, the State asserts that LabCorp had contracts with healthcare providers called "Laboratory Service Agreements" by which LabCorp agreed to provide discounted or special prices on specified lab testing services. According to the State, LabCorp agreed to charge these non-Medicaid payors rates that were discounted for lab testing services compared to the rate LabCorp was reimbursed by Texas Medicaid. Therefore, LabCorp violated Texas's best-price regulations by submitting full-price claims to Texas Medicaid for services that LabCorp discounted for non-Medicaid payors. As a result, Texas Medicaid reimbursed LabCorp millions of dollars more for testing services than it should have. The State argued that LabCorp violated three sections of the Human Resources Code: section 36.002(1), by submitting unlawful claims for reimbursement; section 36.002(2), by failing to rectify overpayments; and sections 36.002(1) and (4)(B), by making false

6

statements on its provider agreements. *See* TEX. HUM. RES. CODE §§ 36.002(1), (2), (4)(B).

Prior to the close of discovery, LabCorp moved for summary judgment on the State's best-price allegations. LabCorp argued that "each of the TMFPA provisions at issue contains a materiality requirement, either explicitly or implicitly." LabCorp argued that because it could negate materiality as a matter of law, it was entitled to summary judgment. LabCorp argued that the allegations against it could not be material because the State continued to pay its Medicaid claims despite knowing its billing practices. After a hearing, the trial court granted LabCorp's motion for summary judgment. The State non-suited its anti-kickback claims without prejudice, and the trial court entered a final judgment in November 2022. The State appeals.

## Discussion

On appeal, the State argues that the trial court erred because the statutes governing its best-price allegations against LabCorp do not require materiality and even if they did, the State produced evidence to establish a genuine issue of material fact on materiality. The State argues its evidence of materiality is (1) millions of claims from LabCorp to Texas Medicaid for lab testing services seeking greater reimbursement than its best price for the same service and (2) more

than 100 Texas Medicaid provider agreements avowing that it would comply with the State's best-price regulations.

The State alleged that LabCorp violated the TMFPA by engaging in three types of unlawful acts. *See* TEX. HUM. RES. CODE § 36.002 (listing unlawful acts). The State's allegations against LabCorp involve two false statement provisions and one omission provision of the TMFPA's enumerated unlawful acts. *See id.* §§ 36.002(1) and (4)(B) (false statement provisions); § 36.002(2) (omission provision). As to the false statement provisions, the TMFPA prohibits:

> (1)     Knowingly making or causing to be made a false statement or misrepresentation of a material fact to permit a person to receive a benefit or payment under a health care program that is not authorized or that is greater than the benefit or payment that is authorized;
>
> . . . .
>
> (4)     knowingly makes, causes to be made, induces, or seeks to induce the making of a false statement or misrepresentation of material fact concerning:
>
> . . . .
>
> (B)     information required to be provided by a federal or state law, rule, regulation, or provider agreement pertaining to a health care program.

TEX. HUM. RES. CODE §§ 36.002(1), (4)(B). The omission provision states that a person commits an unlawful act if that person

> (2)     knowingly conceals or fails to disclose information that permits a person to receive a benefit or payment under a health care

8

> program that is not authorized or that is greater than the benefit or payment that is authorized.

*Id.* § 36.002(2).

## A.     Standard of Review

To prevail on a traditional summary-judgment motion, the movant must demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). "A party moving for traditional summary judgment bears the burden of proving there is no genuine issue of material fact as to at least one essential element of the cause of action being asserted and that it is entitled to judgment as a matter of law." *Lighting Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017). The burden then shifts to the nonmovant to disprove or raise an issue of fact as to at least one of those elements. *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014).

"We review summary judgments de novo, taking as true all evidence favorable to the nonmovant, and indulging every reasonable inference and resolving any doubts in the nonmovant's favor." *Energen Res. Corp. v. Wallace*, 642 S.W.3d 502, 509 (Tex. 2022). "When the trial court does not specify the grounds for its ruling, a summary judgment must be affirmed if any of the grounds on which judgment is sought are meritorious." *Merriman v. XTO Energy Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).

**B.     Analysis**

We address the statutory construction of the two types of provisions in turn.

**1.     The plain language of the omission provision does not require materiality.**

The State argues that the trial court erroneously granted summary judgment under the omission provision because the plain language of section 36.002(2) does not require materiality. *See* TEX. HUM. RES. CODE § 36.002(2). We agree.

A statute's meaning presents a question of law that we review de novo. *Malouf v. State ex rels. Ellis*, 694 S.W.3d 712, 718 (Tex. 2024); *Tex. Health Presbyterian Hosp. of Denton v. D.A.*, 569 S.W.3d 126, 131 (Tex. 2018). We first look at the statute's text and apply the common, ordinary meaning of those words, "unless the text supplies a different meaning or the common meaning leads to absurd results." *Malouf*, 694 S.W.3d at 718; *Tex. Health*, 569 S.W.3d at 131. We construe the words in light of their statutory context, considering the statute as a whole. *Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex. 2019); *see also* TEX. GOV'T CODE § 311.011 ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage.").

Nothing in the language of the omission provision requires that the failure to disclose be material. The word "material" does not appear in the text of section 36.002(2). At the same time, the Legislature included the word "material" in the provisions for three other unlawful acts in section 36.002. Statutory construction

10

requires us to "study the language of the specific provision at issue, within the context of the statute as a whole, endeavoring to give effect to every word, clause, and sentence." *Ritchie v. Rupe*, 443 S.W.3d 856, 867 (Tex. 2014); *cf. URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 757–58 (Tex. 2018) (applying similar principles to contract interpretation). The fact that the omission provision does not use the word "material," while the text of other unlawful acts in the same statute contains the word, demonstrates the Legislature's choice not to impose a materiality requirement in the omission provision. *See* TEX. HUM. RES. CODE §§ 36.002(1), (4)(B), (12); *see also TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) (presuming Legislature chose statute's language with care, including inserting and omitting specific words purposefully).

LabCorp argues that the word "permit" in the omission provision implies a materiality requirement, but the text of other unlawful acts in section 36.002 demonstrates that materiality cannot be implied by use of the word "permit." *See* TEX. HUM. RES. CODE § 36.002(2) (declaring it unlawful to conceal or fail to disclose information "that *permits* a person to receive" an unauthorized benefit or payment" (emphasis added)). We read statutes contextually to give effect to every word, clause, and sentence, *Melden & Hunt, Inc. v. E. Rio Hondo Water Supply Corp.*, 520 S.W.3d 887, 893 (Tex. 2017), because every word or phrase is presumed to have been intentionally used with a meaning and a purpose.

11

*ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017). "[O]ur objective is not to take definitions and mechanically tack them together . . . [;] rather, we consider the context and framework of the entire statute and meld its words into a cohesive reflection of legislative intent." *Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 326 (Tex. 2017).

Section 36.002(1) also uses the word "permit." It prohibits "knowingly making . . . a false statement or misrepresentation of a *material fact to permit*" an unauthorized payment. TEX. HUM. RES. CODE § 36.002(1) (emphasis added). If the use of the word "permit" in section 36.002(2) implied materiality, as LabCorp suggests, the word "material" before the word "permit" in section 36.002(1) would be surplusage. The Legislature's word choice in section 36.002(1) demonstrates that section 36.002(2) does not imply materiality based on the use of the word "permit." *Compare* TEX. HUM. RES. CODE § 36.002(1), *with* TEX. HUM. RES. CODE § 36.002(2).

LabCorp also urges that section 36.002(2) implies materiality by comparing it to common-law fraud claims. LabCorp relies on *Universal Health Servs., Inc. v. U.S. ex. rel. Escobar*, 579 U.S. 176, 185 (2016). In *Escobar*, the Supreme Court interpreted the federal False Claims Act ("FCA"). *Id.* (interpreting 31 U.S.C. § 3729 (a)(1)(A)). The court discussed that the "common law could not have conceived of 'fraud' without proof of materiality." *Id.* at 193 (internal citation

omitted). LabCorp argues that we should look to common-law fraud claims in deciding whether section 36.002(2) has an implied materiality requirement. The State, while not disputing that neither section 36.002(2) nor the FCA provision at issue in *Escobar* contain the word "material," argues that *Escobar* is not analogous. The State cites to several federal cases supporting that we need not rely on the FCA to interpret the TMFPA. *Cf. United States ex rel. Jacobs v. Walgreen Co.*, No. 21-20463, 2022 WL 613160, at *2 (5th Cir. Mar. 2, 2022) (per curiam) (stating scope of FCA claims is different than TMFPA claims). The Texas Supreme Court has said that while the FCA is "similar in aim and tactic, [it] employ[s] materially different language, and the language of our statutes controls the outcome here." *Xerox*, 555 S.W.3d at 522. The text of the omission provision in the TMFPA at issue here is clear and unambiguous. In this instance, we need not look to common-law principles to interpret the statutes related to these statutory enforcement claims.

Finally, LabCorp cautions that we should not rely on the plain meaning of the text of section 36.002(2) because doing so would lead to absurd results. For example, LabCorp suggests that omitting a middle initial could lead to TMFPA enforcement actions. This argument ignores the fact that the statute requires that the omission be knowing. *See* TEX. HUM. RES. CODE § 36.002(2). The hypothetical

also assumes that such an omission is per se immaterial, a question we need not decide today.

We hold that the trial court erred in granting summary judgment for LabCorp because the State's claims against LabCorp based on violations of section 36.002(2) do not require the State to prove materiality as a matter of law.

**2.  The language of sections 36.002(1) and (4)(B) requires that any false statements or misrepresentations be material.**

We next address the State's argument that the statutory language of the false statement provisions in sections 36.002(1) and (4)(B) does not require materiality for claims alleging a false statement was made. We disagree.

The TMFPA false statement provisions at issue here prohibit:

(1)   knowingly making or causing to be made a false statement or misrepresentation of a material fact to permit a person to receive a benefit or payment under a health care program that is not authorized or that is greater than the benefit or payment that is authorized;

(4)   knowingly makes, causes to be made, induces, or seeks to induce the making of a false statement or misrepresentation of material fact concerning:

   . . .

   (B)   information required to be provided by a federal or state law, rule, regulation, or provider agreement pertaining to a health care program.

TEX. HUM. RES. CODE §§ 36.002(1), (4)(B). The statute defines "material" as "having a natural tendency to influence or to be capable of influencing." *Id.* § 36.001(5-a).

The parties' dispute regarding materiality requirements for the false-statement provisions is essentially a grammatical interpretation dispute. The parties do not dispute the meaning of any of the words in sections 36.002(1) and 4(B). Instead, they dispute the relationships between those words and phrases. The State argues that summary judgment regarding its claims under sections 36.002(1) and (4)(B) was erroneous because the statutory text prohibits two different categories of conduct, only one of which requires materiality. According to the State, the statute should be read to prohibit the making of a "false statement *or* [the making of a] misrepresentation of material fact." TEX. HUM. RES. CODE § 36.002(1), (4)(B) (emphasis added). The State argues that the phrase "material fact" only modifies the word "misrepresentation," therefore the State need not prove materiality in proving that LabCorp made false statements under sections 36.002(1) and (4)(B). LabCorp argues that the statute should be read to require materiality for both false statements and misrepresentations. Under LabCorp's interpretation, the false statement provisions prohibit the knowing making of "a false statement . . . of material fact" or "[a] misrepresentation of material fact." *Id.*

15

Reviewing sections 36.002(1) and (4)(B) in context with the other unlawful acts defined in section 36.002, the phrase "of material fact" in those false statement provisions applies unambiguously to both false statements and misrepresentations. *See* TEX. HUM. RES. CODE §§ 36.002(1), (4)(B). The omission provision in section 36.002(2) and the false statement provision in section 36.002(1) both prohibit actions or inaction that "permit[] a person to receive a benefit or payment under a health care program" that is unauthorized or greater than authorized. *See id.* §§ 36.002(1), (2). Were we to interpret the phrase "of material fact" in sections 36.002(1) and (4)(B) as modifying and applying only to the making of a false statement, as the State suggests, we would similarly have to interpret the phrase "under a health care program" in sections 36.002(1) and (2) as modifying only the word "payment" and not the word "benefit." It would be unreasonable to suggest that "under a health care program" modifies "payment[s]" but not "benefit[s]." Similarly, it would be unreasonable to suggest that the phrase "of material fact" modifies only "misrepresentation[s]" but not false statements in sections 36.002(1) and (4)(B).

The State argues that LabCorp's reading of the statute is unreasonable because common grammatical rules suggest that modifiers should always be placed near the words or phrases they modify. *See Tex. Health*, 569 S.W.3d at 132 n.7 (listing grammatical rules related to modifier placement). The Texas Supreme

16

Court has said that modifying phrases "should be applied only to the portion of the sentence immediately preceding it." *Id.* at 132 (quoting *Tex. W. Oaks Hosp., LP. v. Williams*, 371 S.W.3d 171, 185 (Tex. 2012) (internal quotation marks omitted)). According to the State, the fact that the modifier "material" is closest to the word "misrepresentation" in the relevant sections demonstrates that "material" applies only to the word "misrepresentation."

The Texas Supreme Court expounded on the utility of grammar rules for statutory interpretation in *Texas Health*. 569 S.W.3d at 133. In that case, as here, the parties disagreed only on the grammatical construction of the statute, not on the meaning of the words or phrases within it. *See Tex. Health*, 569 S.W.3d at 132. The dispute concerned the meaning of a modifier of an unpunctuated phrase and whether the modifier applied to each item in a three-item series or only the last item in the series. *Id.* The hospital argued that the modifier should apply only to the last item in the series based on the grammatical rule that modifiers should be placed near the words or phrases they modify, and only be applied to the portion of the sentence immediately preceding. *Id.* (quoting *Tex. W. Oaks Hosp.*, 371 S.W.3d at 185). The family argued that the modifier should apply to all three items in a series. *Id.* The court held that common grammatical rules were unhelpful because, even applying them, both interpretations remained reasonable. *Id.* at 132–33. The Court noted that the parties' grammatical arguments raised themes of competing

17

statutory canons of construction. *Id.* at 133 n.8 (noting competing series-qualifier canon and last-antecedent canon). The Court ultimately did not rely on canons of construction because the statutory language considered in context was unambiguous. *Id.* (quoting *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865–66 (Tex. 1999) ("[I]f a statute is unambiguous, rules of construction or other extrinsic aids cannot be used to create ambiguity.")). The Texas Supreme Court, after analyzing the text and context of the statute in question, held that the hospital's interpretation of the statute was the only reasonable interpretation because it gave effect and meaning to every word in the statute. *Id.* at 134.

Here, the State urges us to apply closest-modifier grammatical rules and the last-antecedent canon while LabCorp urges us to use the series-qualifier canon. We decline both parties' suggestions to apply canons of construction, however, because considering the text and context of the statute, its meaning is unambiguous. *See id.* at 133 n.8; *Fitzgerald*, 96 S.W.2d at 865–66. Sections 36.002(1) and (4)(B) make it unlawful to knowingly make false statements or misrepresentations of material fact. TEX. HUM. RES. CODE §§ 36.002(1), (4)(B).

Based on sections 36.002(1) and (4)(B)'s text and statutory context, we conclude that the statute is unambiguous and that construing the statute so that the

18

phrase "material fact" modifies both "false statement" and "misrepresentation" is the only reasonable construction of sections 36.002(1) and (4)(B).

### 3. The trial court erred in ruling for LabCorp because there is a genuine issue of material fact as to materiality under the false-statement provisions.

Having held that materiality in sections of 36.002(1) and (4)(B) applies to the making of false statements or misrepresentations, we further hold that the trial court erred in granting summary judgment for LabCorp because there is a genuine issue of material fact as to materiality. The State alleged that LabCorp made false statements when it submitted claims worth millions of dollars to Texas Medicaid seeking reimbursement for lab testing in amounts greater than its best price for the same services. The State further alleged that LabCorp made misrepresentations when it submitted more than 100 signed Texas Medicaid Provider Agreements, certifying that it would comply with the State's best-price regulations. LabCorp argues that the alleged false statements and misrepresentations could not be material as a matter of law because the State continued to pay its claims and allowed it to continue participating in the Medicaid program. Alternatively, LabCorp argues that there is no genuine issue of material fact as to materiality because LabCorp told the State of its billing practices in 2014 and 2015.

The trial court erred to the extent it concluded that the State's continued payment of LabCorp's claims was conclusive proof that the alleged false

19

statements and misrepresentations were not material. Holding that payment of a provider's claims forecloses a finding of materiality as a matter of law would inhibit the State's ability to ferret out Medicaid fraudsters and protect taxpayer dollars, while simultaneously providing the necessary medical services to indigent Texans. "The Medicaid system's size and complexity, the limited time and financial resources of governmental regulators, and the increasing sophistication of Medicaid scams make chicanery difficult to uncover." *Xerox*, 555 S.W.3d at 525. If the State could not pursue civil penalties against a provider because it had previously paid its fraudulent claims, the State would be faced with the impossible choice of deciding whether to withhold payment to avoid giving taxpayer dollars to a provider committing fraud or instead to withhold necessary medical care from Medicaid recipients.

LabCorp attempts to assert a waiver defense against the State by way of materiality when that defense is unavailable. While the State's continued payment of LabCorp's claims ultimately may be relevant to materiality, in this case it is not conclusive of materiality as a matter of law. *Cf. Escobar*, 579 U.S. at 194–95 & n.5 (listing continued payment as "as strong evidence" for materiality but as one piece of evidence to be considered regarding materiality under the FCA, alongside other evidence). The trial court erred to the extent it held that the State's payment of

20

LabCorp's claims precludes a finding that the alleged false statements and misrepresentations were material.

As to LabCorp's argument that the State had full knowledge of its billing practices, therefore its alleged false statements and misrepresentations could not have been material, we note that the parties dispute the extent of LabCorp's disclosure to the State. In its summary-judgment motion and on appeal, LabCorp argues it fully disclosed its billing practices to the State in a 2014 presentation and a 2015 white paper. The State disputes LabCorp's description of the 2014 presentation and 2015 white paper. According to the State, the presentation focused on "usual and customary" price reporting, as opposed to best-price regulations or LabCorp's compliance with them. The State also asserts that the white paper did not cover best-price regulations. The State further argues that the presentation and paper related to LabCorp's conduct before this suit was filed in 2013 but do not inform whether LabCorp violated best-price regulations since then.

While the presentation and paper are relevant to whether the false-statements and misrepresentations are material, they are not conclusive summary-judgment evidence that precludes a finding of materiality. *See* TEX. HUM. RES. CODE § 36.001(5-a) (defining "material" as "having a natural tendency to influence or to be capable of influencing"). On this record, summary judgment was inappropriate

21

because there is a genuine issue of material fact as to whether and to what extent the State knew of LabCorp's billing practices when it paid claims that violated the best-price regulations and to what extent payment of the claims is indicative of materiality under the TMFPA. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (stating evidence raises genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions considering all summary-judgment evidence). LabCorp was not entitled to summary judgment on the State's false statement provision claims because there is a genuine issue of material fact as to whether LabCorp's alleged false representations and misrepresentations were material.

## Conclusion

We reverse the trial court's summary judgment for LabCorp and remand for further proceedings in accordance with this opinion.


Peter Kelly
Justice

Panel consists of Chief Justice Adams and Justices Kelly and Rivas-Molloy.