# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00473-CV

---

**Katrina J. ("Nina") Morris, Appellant**

**v.**

**Maansi Piparia, M.D.; April Schiemenz, M.D.; and
Christina Sebestyen, M.D., P.A. d/b/a ObGyn North, Appellees**

---

### FROM THE 353RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-17-000374, THE HONORABLE TIM SULAK, JUDGE PRESIDING

---

## O P I N I O N

In this permissive interlocutory appeal, Katrina J. ("Nina") Morris appeals from the trial court's partial summary judgment in favor of Maansi Piparia, M.D., April Schiemenz, M.D., and Christina Sebestyen, M.D., P.A. d/b/a ObGyn North, on Morris's claims brought under the Texas Medical Liability Act (TMLA). *See* Tex. Civ. Prac. & Rem. Code §§ 51.014(d)–(f) (authorizing permissive appeals), 74.153[1] (outlining standard of proof governing cases involving emergency medical care). Morris contends that the trial court erred in determining that the medical care appellees provided to treat her post-C-section hemorrhaging constituted "emergency medical care" as defined in the TMLA, triggering the "willful and wanton standard of proof" for

---

[1] Section 74.153 of the TMLA was amended effective September 1, 2019, but those amendments do not apply to this lawsuit, which was filed before the amendments' effective date. *See* Act of May 22, 2019, 86th Leg., R.S., ch. 1364, §§ 1, 2, 2019 Tex. Sess. Law Serv. 5126, 5126. Therefore, references to Section 74.153 are to the version that was in effect when Morris filed her lawsuit.

Morris to prevail. *See id.* § 74.153. For the reasons explained below, we will affirm the trial court's partial summary judgment.

**BACKGROUND**

Morris seeks to recover damages for personal injuries she allegedly sustained as a result of appellees' medical malpractice and negligence. She alleges in her petition that she presented to St. David's North Austin Medical Center on January 29, 2015, for induction of labor for her first child. "After a trial of labor," she alleges, "the decision was made to proceed with a cesarean section due to arrest of descent." The C-section was completed in the early morning hours of January 31, 2015, but thereafter Morris "experienced significant post-partum hemorrhaging" beginning at 3:34 a.m. She alleges that hypotension and tachycardia accompanied her hemorrhaging but that appellees "spent three hours ineffectively attempting to stop the bleeding rather than proceeding to definitive treatment (i.e., hysterectomy)." Due to appellees' alleged failures to follow the hospital's "Perinatal Hemorrhage Protocol"; to adequately monitor her; and to administer sufficient plasma, platelets, and blood-clotting medicine, Morris's "pulse was lost" and she "coded" twice. Although she was "ultimately resuscitated," Morris alleges that she suffered "an anoxic brain injury and other sequelae as a result of the [heart] arrests."

After discovery, appellees moved for traditional and no-evidence summary judgment, contending that the care they provided Morris beginning at 3:34 a.m. constituted "emergency medical care" under Section 74.001(a)(7) of the TMLA, requiring Morris to prove willful and wanton negligence as provided by Section 74.153, of which she could produce no evidence. *See id.* §§ 74.001(a)(7), .153. After a hearing, the trial court granted appellees partial summary judgment for the care they provided Morris between 3:34 a.m. and 6:20 a.m. but

2

determined that "a fact issue exists as to whether the care at issue in this case provided to Plaintiff from [6:20 a.m.] until [7:18 a.m.] constituted 'emergency medical care' as defined by" section 74.001(a)(7) and that Morris's claims as to the latter period "may proceed to trial."[2] However, finding that "an immediate interlocutory appeal from the portion of" the order granting summary judgment "may materially advance the ultimate termination of the litigation," the trial court granted Morris's motion to pursue an interlocutory appeal and stayed all further proceedings pending resolution of the interlocutory appeal.

In its order, the trial court made the following substantive rulings on the legal questions presented in appellees' motion for summary judgment:

1. Section 74.001(a)(7) does not require the patient to present to the hospital obstetrical unit with an "original" medical emergency to trigger the application of section 74.153's willful and wanton negligence standard of proof. Rather, the post-partum hemorrhage discovered after the cesarean-section delivery was the "original" medical emergency, requiring the Plaintiff to present legally sufficient evidence from a qualified expert that Defendants, with willful and wanton negligence, deviated from the degree of care and skill that is reasonably expected of an ordinarily prudent physician or health care provide[r] in the same or similar circumstances.

2. Section 74.001(a)(7) does not exclude bona fide emergency services provided to a patient who initially presents to the hospital obstetrical unit as stable and capable at that time of being treated as a non-emergency patient, but who later develops the sudden onset of a medical or traumatic condition as described in that provision. Applied here, Plaintiff did not have to initially present to the hospital obstetrical unit with an emergency for the Defendants' care from 0334 until 0620 to fall within the definition of "emergency medical care" found in section 74.001(a)(7), and to trigger the application of the willful and wanton negligence standard of proof required by section 74.153 for Defendants' treatment during that time period.

_____

[2] In her response to appellees' summary-judgment motion, Morris argued that even if the trial court agreed with appellees that portions of the care they provided her constituted "emergency medical care" under the TMLA, the care they provided her after 6:20 a.m. did not meet the statutory definition as a matter of law because there was a genuine issue of material fact as to whether she was "stable" after 6:20 a.m., when appellees completed a uterine artery ligation and stopped the bleeding.

**DISCUSSION**

This appeal presents issues of statutory construction, which we review de novo. *Greater Hous. P'ship v. Paxton*, 468 S.W.3d 51, 58 (Tex. 2015). When construing a statute, our primary objective is to ascertain and give effect to the legislature's intent without unduly restricting or expanding the act's scope. *City of Lorena v. BMTP Holdings, L.P.*, 409 S.W.3d 634, 641 (Tex. 2013). We seek that intent first and foremost in the plain meaning of the text. *Id.* "Undefined terms in a statute are typically given their ordinary meaning, but if a different or more precise definition is apparent from the term's use in the context of the statute, we apply that meaning." *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). "However, we will not give an undefined term a meaning that is out of harmony or inconsistent with other terms in the statute." *State v. $1,760.00 in U.S. Currency*, 406 S.W.3d 177, 180 (Tex. 2013). We resort to rules of construction or extrinsic aids only when a statute's words are ambiguous. *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009).

Morris contends that TMLA Section 74.001(a)(7)'s definition of "emergency medical care" does not apply to her claims and that she is not therefore required to prove that appellees acted with willful and wanton negligence[3] under Section 74.153, which provides:

> In a suit involving a health care liability claim against a physician or health care provider for injury to or death of a patient arising out of the provision of *emergency medical care* in a hospital emergency department or obstetrical unit or in a surgical suite immediately following the evaluation or treatment of a patient in a hospital emergency department, the claimant bringing the suit may prove that the treatment or lack of treatment by the physician or health care provider departed from accepted standards of medical care or health care only if the

[3] Morris does not challenge the trial court's implied ruling that, if the willful-and-wanton standard applies, she did not present any evidence creating a genuine issue of material fact on whether appellees acted with willful and wanton negligence.

4

claimant shows by a preponderance of the evidence that the physician or health care provider, with wil[l]ful and wanton negligence, deviated from the degree of care and skill that is reasonably expected of an ordinarily prudent physician or health care provider in the same or similar circumstances.

Tex. Civ. Prac. & Rem. Code § 74.153 (emphasis added). The TMLA, in turn, defines "emergency medical care" as

[B]ona fide emergency services provided after the sudden onset of a medical or traumatic condition manifesting itself by acute symptoms of sufficient severity, including severe pain, such that the absence of immediate medical attention could reasonably be expected to result in placing the patient's health in serious jeopardy, serious impairment to bodily functions, or serious dysfunction of any bodily organ or part. *The term does not include medical care or treatment that occurs after the patient is stabilized and is capable of receiving medical treatment as a nonemergency patient or that is unrelated to the original medical emergency.*

*Id.* § 74.001(a)(7) (emphasis added).

Morris does not contend that the medical care she received between 3:34 a.m. and 6:20 a.m. does not meet the first sentence of the above definition. Rather, in two issues she contends that one or both of the exclusions in the latter sentence apply. *See id.* Common to both issues is Morris's argument that the exclusions "unambiguously require that a patient initially present [to the hospital emergency department or obstetrical unit] with a medical emergency for the heightened standard of care [i.e., willful and wanton negligence]" to apply. We disagree.

Nothing in Section 74.001(a)(7)'s first sentence indicates *where* or *when* the "sudden onset of a medical or traumatic condition" must occur for the care rendered in response to constitute "emergency medical care." Morris's proposed construction—that such "onset" must occur *before* a patient presents to a hospital emergency department or obstetrical unit— would require us to engraft an extra-statutory requirement onto the statute's text, which we may not do. *See PHI, Inc. v. Texas Juv. Just. Dep't*, 593 S.W.3d 296, 305 (Tex. 2019) ("[N]o court

5

has the authority, under the guise of interpreting a statute, to engraft extra-statutory requirements not found in a statute's text."). Patients frequently present to hospital emergency departments and obstetrical units for care other than "bona fide emergency services," as Morris herself did. In light of that reality, we conclude that if the legislature had intended for the definition to apply only to patients who initially present to a hospital emergency department or obstetrical unit with a medical emergency, rather than also to patients who develop medical emergencies while being treated for non-emergencies, it could and would have said so in a straightforward fashion rather than in the strained way that Morris proposes—via the exclusions limiting the general definition in the first sentence.

Specifically as to the latter exclusion—whether the medical services at issue were "unrelated to the original medical emergency"—Morris relies entirely on the word "original." She urges that because the phrase reads "the *original* medical emergency" rather than simply "the medical emergency," the word "original" must mean that the patient's presence in the hospital emergency department or obstetrical unit, in the first instance, is the result of an emergency; otherwise, she contends, the word would be superfluous. However, as already discussed, the statute cannot reasonably be construed to include such a requirement without adding requirements to the first sentence of Section 74.001(a)(7) that do not appear in the plain text. Instead, the only reasonable construction of the phrase "original medical emergency," when read in context of the whole paragraph, is that it serves merely as a shorthand reference to the earlier lengthy description of an emergency condition requiring "bona fide emergency services"—i.e.,

> the sudden onset of a medical or traumatic condition manifesting itself by acute
> symptoms of sufficient severity, including severe pain, such that the absence of

6

> immediate medical attention could reasonably be expected to result in placing the patient's health in serious jeopardy, serious impairment to bodily functions, or serious dysfunction of any bodily organ or part.

*See* Tex. Civ. Prac. & Rem. Code § 74.001(a)(7). The common, ordinary meaning of the word "original" is "of, relating to, or constituting an origin or beginning: initial." *See Original*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/original (last visited February 8, 2021); *see also Texas State Bd. of Exam'rs of Marriage & Fam. Therapists v. Texas Med. Ass'n*, 511 S.W.3d 28, 34–35 (Tex. 2017) (noting that when statute does not define term, courts apply its common, ordinary meaning unless different meaning is implied from statute's language and "look first" to term's dictionary definition). Therefore, the phrase "original medical emergency" simply refers to the *initial* "sudden onset of a medical or traumatic condition" requiring "bona fide emergency services" so as to distinguish such services from later-rendered services "unrelated" to that initial condition. It dictates nothing about *when* or *where* the medical emergency must occur.

The Texas Supreme Court has recently recognized that a patient can present to an obstetrical unit for routine labor and delivery and then, during that medical care or treatment, develop an obstetrical emergency that triggers Section 74.153's heightened standard. *See Glenn v. Leal*, 596 S.W.3d 769, 771–72 (Tex. 2020) (per curiam) (holding that patient need not be treated in emergency department before receiving emergency care in obstetrical unit to trigger Section 74.153 standard of willful and wanton negligence); *Texas Health Presbyterian Hosp. of Denton v. D.A.*, 569 S.W.3d 126, 137 (Tex. 2018) (same). While the supreme court in *Glenn* and *Texas Health* did not expressly address the exclusions at issue in this case, we believe that those

7

opinions provide guidance for application of the statute in this case and support our construction.[4]

As to the other exclusion, Morris argues in her brief that she

> was stable and capable of receiving medical treatment as a nonemergency patient when she presented to hospital's obstetrical unit on January 29, 2015; therefore, hospital care that occurred thirty-two hours later on January 31, 2015 is care that occurred after she was stable and capable of receiving medical treatment as a non-emergency patient.

Besides being conclusory, however, Morris's argument does not follow the statute, which refers to a patient being "stabilized," not "stable." *See* Tex. Civ. Prac. & Rem. Code § 74.001(a)(7). In the context of Section 74.001(a)(7), particularly considering that the exclusion follows the scenario outlined in the first sentence (i.e., that a patient first has a medical emergency), the word "stabilize" functions as a transitive verb, requiring an object (i.e., a patient) upon whom a subject (i.e., a medical provider) acts. *See Stabilize*, Merriam-Webster.com Dictionary, www.merriam-webster.com/dictionary/stabilize (last visited February 8, 2021) (denoting "stabilize" as transitive verb meaning "to make stable, steadfast, or firm"); *see also Greater Hous. P'ship*, 468 S.W.3d at 59 (noting that because common words often have multiple dictionary definitions, courts look to contextual clues in statute to determine which definition is "most apposite"). In other words, the exclusion unambiguously refers to care that is provided to a patient who had at some point become unstable (i.e., by the "sudden onset of a medical or traumatic condition . . .") but who has since been stabilized (i.e., by medical providers) so as to no longer require care as

---

[4] We also decline Morris's invitation to consider as legislative intent the remarks of individual legislators discussing the TMLA. *See Texas Health Presbyterian Hosp. of Denton v. D.A.*, 569 S.W.3d 126, 136–37 (Tex. 2018) (noting that courts do not rely on extrinsic construction aids when statute is unambiguous and that individual legislator's intent does not represent legislature's intent).

an emergency patient. Morris's proposed construction of the statute would render the exclusion meaningless, because the essence of an emergency is that a person suddenly progresses from a "stable" condition to a severely threatened one; if the patient presented to the hospital or obstetrical unit in a stable condition, there would be no need for an exclusion for that person's care provided after admission to the facility because there would be no medical emergency in the first place. We therefore overrule Morris's second issue.[5]

## CONCLUSION

Having determined that the trial court properly construed and applied Sections 74.001(a)(7) and 74.153 of the TMLA, we affirm its partial summary judgment.

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Kelly

Affirmed

Filed: February 10, 2021

---

[5] In the argument section of her brief, Morris additionally contends that "some" of the care at issue was rendered in a "surgical suite" and therefore—because it is undisputed that she had not first been evaluated or treated in the hospital's emergency department—that the medical care is not subject to the heightened standard of care. *See* Tex. Civ. Prac. & Rem. Code § 74.153 (requiring claimant to prove heightened negligence standard in suit arising out of provision of emergency medical care "in a surgical suite immediately following the evaluation or treatment of a patient in a hospital emergency department"). However, Morris has waived this issue because she did not raise it in opposition to appellees' summary-judgment motion, and we may not consider as grounds for reversal of a summary judgment any issue not expressly presented to the trial court. *See* Tex. R. Civ. P. 166a(c); *State Bd. of Ins. v. Westland Film Indus.*, 705 S.W.2d 695, 696 (Tex. 1986) (per curiam); *Texas Dep't of Ins. v. Insurance Co. of Pa.*, 306 S.W.3d 897, 903 (Tex. App.—Austin 2010, no pet.).