

KEN PAXTON
ATTORNEY GENERAL OF TEXAS

June 25, 2025

The Honorable Giovanni Capriglione
Chair, House Committee on Delivery of Government Efficiency
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

**Opinion No. KP-0494**

Re: Scope of third-party obligations resulting from child support liens under Family Code chapter 157 (RQ-0567-KP)

Dear Representative Capriglione:

You ask a series of questions about third-party duties resulting from the enforcement of child support obligations under Chapter 157 of the Texas Family Code.[1] TEX. FAM. CODE §§ 157.001–.551. In particular, your questions relate to the duration and scope of child support liens and levies—prompted by a focused concern about financial institutions' duties regarding current and future accounts. Request Letter at 1–2. We thus limit our opinion accordingly and begin with some background information to provide context for your questions.

**Chapter 157 of the Family Code provides for child support liens and levies as mechanisms to enforce child support obligations.**

Title 5 of the Family Code addresses the parent-child relationship and suits affecting that relationship, TEX. FAM. CODE §§ 101.001–267.002, providing for court-ordered child support payments,[2] *id.* § 154.001, and detailing how a claimant[3] can enforce those obligations through liens and levies on accounts maintained by a third-party financial institution, *id.* §§ 157.312, .327.

---

[1] *See* Letter from Hon. Giovanni Capriglione, Chair, H. Comm. on Pensions, Invs., and Fin. Servs., to Hon. Ken Paxton, Tex. Att'y Gen. at 1–2 (Oct. 17, 2024), https://www.texasattorneygeneral.gov/sites/ default/files/request-files/request/2024/RQ0567KP.pdf ("Request Letter").

[2] For purposes of Title 5 of the Family Code, a person who is "required to make payment under the terms of a support order for a child" is referred to as an "obligor" and the "person or entity entitled to receive payment of child support" is referred to as the "obligee." TEX. FAM. CODE §§ 101.001, .021–.022.

[3] For purposes of subchapter G, Chapter 157 of the Family Code, a "claimant" refers to an obligee or their private attorney, "the Title IV-D agency providing child support services[,] [] a domestic relations office or local registry[,] or [] an attorney appointed as a friend of the court." *Id.* § 157.311(2).

A child support lien works to secure the payment of any child support arrearages owed by an obligor pursuant to a child support order by giving the obligee or claimant a right to the obligor's property. *Id.* §§ 157.318(b), .326(b). A "lien arises by operation of law against real and personal property of an obligor for all amounts of child support due and owing, including any accrued interest, regardless of whether the amounts have been adjudicated or otherwise determined, subject to the requirements" to perfect the lien. *Id.* § 157.312(d); *see also, e.g.*, *Ramsey v. United States*, No. A-15-CV-853-LY, 2017 WL 5478150, at *2 (W.D. Tex. Mar. 28, 2017) (explaining that, under both state and federal law, "each incident of unpaid child support results in a statutory judgment and lien when the payment was due" and citing Texas Family Code Section 157.261 and subsection 157.312(d) and Title 42 of the United States Code subsection 666(a)). An account maintained by a financial institution is property to which a child-support lien may attach. TEX. FAM. CODE § 157.317(a)(1); *see also id.* § 157.311(1) (defining "account"), (4) (defining "financial institution"). The lien may be perfected by delivering notice to a financial institution "believed to be in possession of . . . personal property of the obligor." *Id.* §§ 157.314(b)(3), .316(a) (providing a child support lien is perfected when a child support lien notice is delivered as provided by Section 157.314); *see also id.* § 157.3145(a) (addressing how to serve notice of the lien on a financial institution). Delivery of the notice both attaches and perfects the lien. *Id.* §§ 157.316, .317(a-1).

Once perfected, a claimant may then seek to levy on the assets and thereby cause the financial institution to pay over the funds to the claimant. Assuming child support arrearages have been judicially or administratively determined, a claimant may levy on assets owned by or owed to an obligor that are possessed or controlled by a financial institution without bringing a foreclosure action. *Id.* §§ 157.327–.331. To levy on an obligor's funds that are possessed or controlled by a financial institution, the claimant must deliver a notice of levy to the financial institution and the obligor.[4] *Id.* §§ 157.327(a), .328(a). The notice to the financial institution must, among other things, direct the financial institution to pay the amount of arrearages to the claimant between fifteen and twenty-one days after the date the notice is delivered. *Id.* § 157.327(b)(2). The financial institution must, with certain exceptions, remit the monies to the claimant. *Id.* § 157.328(b)(2) (providing, for example, that the obligor may contest the levy by filing suit). If the financial institution surrenders the property, it is not liable to the obligor or other person for the property surrendered. *Id.* § 157.329.

**A child support lien continues until all current child support and arrearages are paid or the lien is otherwise released**.

Your first series of questions ask about the duration of a child support lien. *See* Request Letter at 1. Section 157.318 expressly provides that "[a] lien is effective until all current support and child support arrearages, including interest" and certain costs and fees "for which the obligor is responsible, have been paid or the lien is otherwise released as provided by" subchapter G. TEX. FAM. CODE § 157.318(a).

---

[4] A levy on the financial institution of a deceased obligor is governed by a separate section of the Family Code. *See* TEX. FAM. CODE § 157.3271. Given the focus of your request, however, we do not address that topic. *See* Request Letter at 2.

Several provisions of subchapter G address the release of a lien. For instance, a lien release may be signed by the claimant and delivered to the person in possession of the personal property, or ordered by a court when arrearages do not exist. *Id.* § 157.319(a). Subchapter G also provides that a "claimant may at any time release a lien on all or part of the property of the obligor or return seized property, without liability, if assurance of payment is considered adequate by the claimant or if the release or return will facilitate the collection of the arrearages."[5] *Id.* § 157.321(a). Additionally, a claimant must execute a release of the child support lien when the amount of support that is due, along with any costs and reasonable attorney's fees, are paid in full.[6] *Id.* § 157.322.

In sum, the Family Code makes clear that a child support lien on an account with a financial institution has no uniform ending date but instead continues until all current support and arrearages (including interest, costs, and fees) are paid or the lien is otherwise released pursuant to subchapter G. *Id.* § 157.318(a); *see also, e.g.*, *City of Rockwall v. Hughes*, 246 S.W.3d 621, 626 (Tex. 2008) (explaining that when a statute's language is clear and unambiguous courts do not resort to rules of construction or extrinsic aids to construe the language).

**A child support lien attaches to an obligor's property that is in the possession or control of a financial institution from the date the child support lien notice is delivered to the financial institution, including property acquired after deliver of the notice.**

Your second series of questions relate to whether "a child support lien attach[es] to property that comes into the possession or control of a" financial institution after the delivery of the lien notice. Request Letter at 1. You suggest subsection 157.317(a-1) is ambiguous as to whether "the child support lien attaches to after-acquired property." *Id.* at 3–4. We disagree.

Courts "discern a statute's objectives from its plain text" which "must always be read 'in context—not isolation.'" *Pub. Util. Comm'n of Tex. v. Luminant Energy Co.*, 691 S.W.3d 448, 460 (Tex. 2024) (citation omitted). A court "'give[s] meaning to every word in a statute, harmonizing each provision,' while 'consider[ing] the context and framework of the entire statute,' in order to 'meld its words into a cohesive reflection of legislative intent.'" *Id.* at 460–61 (second alteration in original) (citations omitted). When a statute is clear and unambiguous courts do not resort to rules of construction or extrinsic aids to construe the language. *See, e.g.*, *Hughes*, 246 S.W.3d at 626.

Subsection 157.317(a-1) addresses the property to which a lien attaches. TEX. FAM. CODE § 157.317(a-1). Its plain text reveals a lien attaches to the obligor's "property owned or acquired" and "in the possession or control of a third party, from the date the lien notice is delivered." *Id.* The phrase "from the date" connotes a continuing obligation rather than a fixed duty, as would be communicated by "as of" or "on." *See generally Tex. Health Presbyterian Hosp. of Denton v. D.A.*, 569 S.W.3d 126, 132 (Tex. 2018) (recognizing that "grammar rules can be crucial to proper

---

[5] Section 157.321 further advises that "[t]he release or return may not operate to prevent future action to collect from the same or other property owned by the obligor." TEX. FAM. CODE § 157.321(a).

[6] Relevant here, the release "is effective when[] . . . delivered to any other individual or organization that may have been served with a lien notice" under subchapter G. *Id.* § 157.322(b)(2).

construction"); ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 140 (2012) (discussing the "Grammar Canon," which counsels that "[w]ords are to be given the meaning that proper grammar and usage would assign to them"). The mandatory content of lien notices under state law confirms the same—explaining that "the lien attaches to all nonexempt real and personal property of the obligor . . . , including any property specifically identified in the notice *and any property acquired after* the date of filing or delivery of the notice." TEX. FAM. CODE § 157.313(a)(9) (emphasis added). Likewise, the lone exception for motor vehicles—requiring that a claimant "file a notice for each after-acquired motor vehicle" in order for a previously perfected lien to attach—further demonstrates that a lien attaches to property obtained after perfection unless otherwise provided. *See id.* § 157.313(d).

Taken together, the Family Code unambiguously provides that a lien attaches to all property of the obligor in the possession or control of a financial institution from the date the child support lien notice is delivered to the financial institution, which includes property acquired after delivery of the notice.[7]

> **Compliance with a child support levy may, but does not necessarily, lead to the release of a child support lien.**

Your third series of questions concern whether "compliance with a levy dispose[s] of the child support lien notice as to a third-party recipient." Request Letter at 2. As previously stated, a child support lien continues until all current support and arrearages (including interest, costs, and fees) are paid or the lien is otherwise released pursuant to subchapter G. *See* discussion *supra* p. 3. Liens and levies carry different obligations and potential liabilities under the Family Code. An institution with actual notice of a lien cannot pay over, release, sell, transfer, encumber, or convey property to which that lien has attached. *See* TEX. FAM. CODE § 157.319(a)–(b) (discussing obligations and liability); *see also id.* § 157.3145 (discussing service on a financial institution). "A financial institution that receives notice of levy," on the other hand, is separately prohibited from closing an account in which an obligor has an ownership interest—among other things—and must provide notice to others with an ownership interest in those accounts. *Id.* § 157.327(c)–(d). These institutions are likewise directed to pay no more than the arrearages due "from the assets of . . . or from funds due to the obligor that are held or controlled by the institution" within fifteen to twenty-one days. *Id.* § 157.327(b)(2).

---

[7] You raise concerns about a financial institution receiving a "lien notice for an obligor who is not an account holder at the time" the lien notice is served. Request Letter at 2. The Office of the Attorney General ("OAG") is designated as the Title IV-D child support enforcement agency for the State of Texas. TEX. FAM. CODE §§ 101.033, 231.001. As such, the OAG is required to develop an electronic data match exchange program to identify accounts of a child support obligor "owing past-due child support and to enforce support obligations against the obligor, including the imposition of a lien and a levy . . . on an obligor's assets held in financial institutions as required by federal law." *Id.* § 231.307(a) (referencing 42 U.S.C. § 666). The electronic data match exchange program regulations require financial institutions doing business in Texas to participate in the program by "matching the names of delinquent child support obligors with the names of account holders and providing information from matched account owner records on all accounts owned by the delinquent child support obligor" every three months. 1 TEX. ADMIN. CODE § 55.553(a). This program may minimize the possibility of a financial institution receiving a lien notice for a non-account holder.

Ultimately, the fact that compliance with a levy may lead to the release of a lien does not mean that it must.[8] *See, e.g.*, *id.* §§ 157.322 (requiring a claimant to execute a release of the child support lien when the amount of support that is due, along with any costs and reasonable attorney's fees, are paid in full), .331 (recognizing that an individual levy may not produce sufficient assets and authorizing subsequent levies, which compel separate obligations and liabilities from those prior, until arrearages are fully satisfied).

---

[8] Though you also raise several practical concerns about a financial institution's ability to discharge liability under a perfected lien, Request Letter at 3–6, none justifies a departure from the Family Code's plain text. We note, however, that financial institutions possess several means of discharging liability. *See, e.g.*, TEX. FAM. CODE § 157.323(b) (providing that a financial institution may be joined as a respondent in an action to foreclose a child support lien); Tex. R. Civ. P. 43 ("Interpleader").

**S U M M A R Y**

Based on the plain text of Family Code subsection 157.318(a), child support liens on accounts with financial institutions have no uniform ending date but continue until all current support and arrearages (including interests, costs, and fees) are paid or the lien is otherwise released pursuant to Chapter 157 of the Family Code.

Family Code subsection 157.317(a-1) addresses property to which a child support lien attaches. The plain text of that subsection reveals that a lien attaches to all property of the obligor in the possession or control of a financial institution from the date the child support lien notice is delivered to the financial institution, which includes property acquired after deliver of the notice.

Compliance with a child support levy may, but does not necessarily, lead to the release of a lien.

Very truly yours,

K E N   P A X T O N
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

LESLEY FRENCH
Chief of Staff

D. FORREST BRUMBAUGH
Deputy Attorney General for Legal Counsel

JOSHUA C. FIVESON
Chair, Opinion Committee

CHRISTY DRAKE-ADAMS
Assistant Attorney General, Opinion Committee